Laura R. Gerber (*Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, Washington 98101
(206) 623-1900
lgerber@kellerrohrback.com

*Attorney for Plaintiffs and the Putative Class*
(Additional Counsel Listed on Signature Block)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| NANCY PAPERNO, et al., | Case No. 3:23-cv-05114-RFL |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |
| v. | |
| WHIRLPOOL CORPORATION, | |
| Defendant. | |

Date:     Tue. December 10, 2024
Time:     10:00 a.m.
Judge:    Hon. Rita F. Lin
Location: Courtroom 15, 18th Flr.

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUES TO BE DECIDED ............................................................. VI

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ......................................................................................................3

        A.      A Brief Summary of the Lawsuit ...............................................................3

        B.      A Summary of the Mediation Efforts and Agreement to Settle. ................5

III.    SETTLEMENT TERMS ........................................................................................6

        A.      Settlement Class Definition and Estimated Settlement Class Size. ............6

        B.      Benefits to Settlement Class Members. ......................................................7

        C.      Class Counsel's Attorney Fees and Expenses and the Settlement Class
                Representatives' Service Awards. ...............................................................9

        D.      The Release Satisfies the Ninth Circuit's "identical factual predicate" Requirement..10

        E.      The Proposed Plan of Allocation ...............................................................11

        F.      Proposed Claim Form Process ...................................................................11

IV.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL ...........................13

        A.      Settlement Class Representatives and Plaintiffs' Counsel Have Adequately
                Represented the Interests of the Settlement Class. ...................................14

        B.      The Settlement Agreement Was Negotiated at Arm's Length. ..................14

                1.      The Settlement Also Satisfies the *Bluetooth* Factors. ...................15

        C.      The Relief Offered in the Settlement Is More Than Adequate....................16

                1.      The Strengths and Risks of Plaintiffs' Claims .............................17

                        a.      Comparing the Strengths and Risks of the Implied Warranty Claims..18

                        b.      Comparing the Strengths and Risks of the Consumer Protection Claims.
                                .........................................................................................19

                2.      Further Litigation Would Be Expensive, Complex, and Lengthy..................19

        D.      The Settlement Treats Settlement Class Members Equitably. ....................20

V.      THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.......................20

A.    The Settlement Class Satisfies the Rule 23(a) Prerequisites. .......................................20

    1.    The Class is Sufficiently Numerous. .................................................20

    2.    There Are Common Questions of Law and of Fact. .........................................21

    3.    The Settlement Class Representatives' Claims are Typical of Settlement Class Members' Claims. ........................................................21

B.    The Settlement Class Satisfies Rule 23(b)(3)...........................................22

    1.    Common Issues of Law and Fact Predominate.............................................22

    2.    Class Treatment is Superior ........................................................23

VI.    THE PROPOSED SETTLEMENT ADMINISTRATOR, NOTICE PROGRAM, AND PROCESS FOR OPT-OUTS AND OBJECTIONS SHOULD BE APPROVED ..................23

A.    The Settlement Administrator ..........................................................23

    1.    The Parties Propose Appointing Angeion Group as Settlement Administrator. ........................................................................23

    2.    The Settlement Administrator's Estimated Claims Rate ................................23

B.    The Proposed Notice Plan ..............................................................24

C.    Opt-Outs and Objections ..............................................................25

VII.    CONCLUSION .............................................................................25

PROPOSED FINAL APPROVAL HEARING SCHEDULE ........................................................27

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

*Ambassador Hotel Co. v. Wei-Chuan Inv.*,
189 F.3d 1017 (9th Cir. 1999) ...............................................................................18

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) .................................................................................13

*In re Apple Inc. Sec. Litig.*,
No. 4:19-cv-02033-YGR, 2024 WL 3297079 (N.D. Cal. June 3, 2024) ...............11

*In re Arris Cable Modem Consumer Litig.*,
327 F.R.D. 334 (N.D. Cal. 2018).........................................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......................................................................... 15, 16

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ........................................................................ 15, 16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
738 F. Supp. 2d 1011 (N.D. Cal. 2010)................................................................18

*Chambers v. Whirlpool Corp.*
No. 8:11-cv-01733-FMO-JCG (C.D. Cal. Nov. 15, 2021).....................................17

*Cleveland v. Whirlpool Corp.*,
No. 0:20-cv-01906-WMM-KMM (D. Minn. June 23, 2022)...............................17

*Corzine v. Whirlpool Corp.*,
No. 15-cv-05764 (N.D. Cal. Dec. 31, 2019)........................................................17

*Cottle v. Plaid Inc.*,
340 F.R.D. 356 (N.D. Cal. 2021) .........................................................................14

*del Campo v. Am. Corrective Counseling Servs., Inc.*,
254 F.R.D. 585 (N.D. Cal. 2008) .........................................................................20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................... 22, 23

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ...............................................................................11

*Lagunas v. Young Adult Inst., Inc.*,
No. 23-cv-00654-RS, 2024 WL 1025121 (N.D. Cal. Mar. 8, 2024) .....................20

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ...................................................................20

*Negrete v. Allianz Life Ins. Co.*,
    238 F.R.D. 482 (C.D. Cal. 2006) .......................................................................21

*In re Netflix Priv. Litig.*,
    No. 5:11-cv-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..............18

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...........................................................................................23

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ..............................................................................10

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..............................................................................14

*Sandoval v. Cnty. of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) ..............................................................................21

*Senne v. Kansas City Royals Baseball Corp.*,
    934 F.3d 918 (9th Cir. 2019) ..............................................................................22

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..............................................................15

*Trosper v. Styker Corp.*,
    No. 13-cv-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ..................14

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ...........................................................................................22

*Valliere v. Tesoro Ref. & Mktg. Co. LLC*,
    No. 17-cv-00123-JST, 2020 WL 13505042 (N.D. Cal. June 26, 2020) ...............22

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    MDL No. 2672 CRB (JSC), 2017 WL 2212783 (N.D. Cal. May 17, 2017) ..........17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...........................................................................................21

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ..............................................................................21

*Wilson v. Tesla, Inc.*,
    No. 17-cv-03763-JSC, 2019 WL 2929988 (N.D. Cal. July 8, 2019) ...................15

**STATUTES**

Cal. Civ. Code § 1791.1(a) ..................................................................18

Cal. Civ. Code § 1791.1(c) ..................................................................19

Cal. Com. Code § 2314(2) ...................................................................18

California's Consumers Legal Remedies Act .............................. 4, 18, 19

California's Unfair Competition Law .......................................... 4, 18, 19

**RULES**

Fed. R. Civ. P. 23(a) .....................................................................20, 21

Fed. R. Civ. P. 23(b) ................................................................ 1, 22, 23

Fed. R. Civ. P. 23(c) ...........................................................................24

Fed. R. Civ. P. 23(e) ...........................................................................13

**OTHER AUTHORITIES**

4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. 2002) ..........................19

**STATEMENT OF THE ISSUES TO BE DECIDED**

The issues to be decided on this Motion are:

1.    Whether the proposed Settlement warrants preliminary approval;

2.    Whether to certify this action as a class action for purposes of settlement;

3.    Whether the Court should approve the notice plan, including the selection of Angeion Group as Settlement Administrator; and

4.    Whether the Court should schedule a Final Approval Fairness Hearing to determine whether the Settlement and Plaintiffs' forthcoming application for an award of attorneys' fees, costs, expenses, and Service Awards should be finally approved.

PLEASE TAKE NOTICE that on December 10, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Rita F. Lin, United States District Judge for the Northern District of California, at the United Sates Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs will and hereby do move this Court for an order granting this Unopposed Motion for Preliminary Approval of Class Action Settlement.

Plaintiffs seek an order pursuant to Federal Rule of Civil Procedure 23(b)(3) certifying the Settlement Class; preliminarily approving the Settlement as fair, reasonable, and adequate; directing notice to the Settlement Class in the form and manner proposed by the Parties as set forth in the Settlement Agreement, the Admin. Decl., and all attached exhibits; appointing Angeion Group to serve as the Settlement Administrator; appointing Plaintiffs Nancy Paperno and Robert Gibbany as Settlement Class Representatives and the undersigned attorneys as Class Counsel; and setting a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's forthcoming motion for an award of attorneys' fees, costs, expenses, and service awards.

# I.    INTRODUCTION

The proposed Settlement Class Representatives[1] and Defendant Whirlpool Corporation have reached a settlement that reimburses Settlement Class Members—all persons who purchased (other than from resale) or otherwise obtained a Class Refrigerator within the United States and its territories from Whirlpool or its authorized resellers, subject to certain exclusions explained below—whose Class Refrigerators' experience a Frost Clog Issue.[2] For Frost Clog Issues arising within eight years after manufacture of the refrigerator, Settlement Class Members will be entitled to cash reimbursement of certain out-of-pocket expenses that they incurred when they repaired and/or replaced their refrigerators. This cash compensation is a great result at an early juncture in this case.

---

[1] The capitalized terms in this Memorandum have the meanings set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement" or "SA"). *See* Joint Declaration of Laura R. Gerber, James Bradley and Kenneth Behrman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Certification of Settlement Class ("Joint Counsel Declaration" or "Joint Counsel Decl."), attached hereto as Exhibit A, Ex. A.

[2] The Complaint refers to this as an "RC Evaporator Defect," *see* Class Action Complaint ("Complaint" or "Compl.") ¶ 15, ECF No. 1. Because the phrase does not describe the problem consumers experience with their refrigerators—frost buildup in the refrigeration compartment and periodic cooling failures caused by frost buildup on the refrigeration compartment's evaporator—the Parties hereafter refer to the problem as a "Frost Clog Issue."

The benefits the Settlement provides are tailored to redress Class Members' injuries—incurring repair and/or replacement costs because their Class Refrigerators failed to properly cool their food. If the Settlement is approved, for each Paid Qualifying Repair, Settlement Class Members can recover: (1) in years one through three after manufacture, the Actual Cost of Repair up to a maximum of $300 per Paid Qualifying Repair; (2) in years four through six after manufacture, the Actual Cost of Repair up to a maximum of $225 per Paid Qualifying Repair; and (3) in years seven or eight after manufacture, the Actual Cost of Repair up to a maximum of $150 per Paid Qualifying Repair. For Paid Qualifying Replacements, Settlement Class Members will be entitled to a cash payment equivalent to a percentage of the original price of the Refrigerator as follows: (1) in years one through three after manufacture, 75% of the original purchase price of the Refrigerator if Whirlpool's records show the Settlement Class Member contacted Whirlpool to request replacement before paying out-of-pocket for the same; otherwise, 50% of the Refrigerators' original purchase price; and (2) in years four through six after manufacture, 45% of the original purchase price of the Refrigerator if Whirlpool's records show that Settlement Class Members contacted Whirlpool to request replacement before paying out-of-pocket for the same; otherwise, 25% of the Refrigerators' original purchase price. Further, Settlement Class Members who experience a Frost Clog Issue after the Notice Date but within eight years after manufacture of their Refrigerator will be entitled to a credit toward repair of the Post-Notice Frost Clog Issue. These benefits are described more fully in the Settlement Agreement and below. At its core, the Settlement addresses the central allegation of this Action and achieves key relief sought by Plaintiffs Nancy Paperno and Robert Gibbany (collectively, "Plaintiffs").[3]

In light of the substantial monetary benefits conferred upon Settlement Class Members and the significant risks faced through continued litigation, the Settlement terms are "fair, reasonable, and adequate," as required by Federal Rule of Civil Procedure 23(e)(2). As such, Plaintiffs request the Court preliminarily approve the Settlement, appoint Class Counsel and the Settlement Class

---

[3] While Whirlpool denies Plaintiffs' allegations, it has agreed to the Settlement Agreement and does not oppose this Motion.

Representatives, authorize providing notice to the Settlement Class, and set a hearing to consider final approval of the Settlement.[4]

## II.    BACKGROUND

### A.    A Brief Summary of the Lawsuit

The refrigerators at issue are three-door, French-door refrigerators manufactured by Whirlpool and sold under various brand names that employ a dual-evaporator system. Evaporators cool the refrigerator and freezer compartments. In performing this role, frost and ice sometimes form on the evaporator coil. Eventually, excessive frost or ice formation on the evaporator restricts air flow and causes cooling failures. To combat this issue, defrost heaters may accompany evaporators to automatically heat up and melt accumulated frost and ice. These refrigerators lack a defrost heater for the refrigeration compartment's evaporator. Plaintiffs allege these refrigerator models were prone to a failure of the defrost heating system in the refrigerator's dual evaporator cooling system that causes a buildup of frost and ice in the refrigeration compartment on or around the evaporator, which, in turn, affects the refrigerator's ability to cool food properly (the "Frost Clog Issue"). As a result, consumers lose the use of their refrigerator and must spend time and money having their refrigerator serviced.

Beginning in May 2022, Plaintiffs' Counsel began investigating the Frost Clog Issue that consumers were confronting with various Whirlpool refrigerators. Joint Counsel Decl. ¶ 8. It soon became apparent that the issue arose repeatedly in French door refrigerators with a dual evaporator cooling system which were designed, manufactured, distributed, marketed and/or sold by Whirlpool under several brand names, including Whirlpool, KitchenAid, JennAir, and Maytag. *Id.* For over a year, Plaintiffs' Counsel conducted a thorough pre-filing investigation into the Frost Clog Issue impacting Whirlpool refrigerators. *Id.* ¶ 9. Plaintiffs' Counsel reviewed publicly available information, including

---

[4] In support of this Motion, Plaintiffs submit the following: (1) Joint Counsel Declaration (the Joint Counsel Declaration includes: the Settlement Agreement, Ex. A, and all exhibits attached thereto, including the Claim Forms, List of Refrigerators; Long-Form Notice; Technical Service Pointer, Publication Notice; and Summary Notice, Ex. A at Exs. 1–6, respectively; the Comparable Outcomes Chart, Ex. B; Résumé of Keller Rohrback L.L.P., Ex. C; Résumé of Rogers, Patrick, Westbrook & Brickman, LLC, Ex. D; Résumé of Kenneth Behrman, Ex. E; and [Proposed] Order granting final approval of the Settlement, Ex. F); (2) Declaration of Nancy Paperno ("Paperno Decl."); (3) Declaration of Robert Gibbany ("Gibbany Decl."); (4) Declaration of Steven Weisbrot on behalf of the proposed Settlement Administrator ("Admin. Decl."); and (5) Declaration of Frank Bernatowicz ("Bernatowicz Decl."), and all exhibits.

refrigerator manuals, consumer complaints on various websites dating to as early as 2013, and three technical service pointers ("TSPs") Whirlpool developed and issued to its authorized service providers containing several troubleshooting steps to address frost or ice forming on the front area of the refrigeration compartment. *Id.* They also consulted with refrigerator experts to determine the likely cause of the Frost Clog Issue, as well as speaking to numerous consumers who experienced the Frost Clog Issue with their refrigerators. *Id.* Plaintiffs' Counsel also investigated legal claims associated with the factual allegations and Whirlpool's potential defenses to any action. *Id.*

After being retained by Plaintiffs in April of 2023, Plaintiffs' Counsel drafted and finalized the Class Action Complaint. *Id.* ¶ 10. On May 16, 2023, and June 7, 2023, Plaintiffs' Counsel sent a pre-filing demand to Whirlpool and attached a copy of the draft Class Action Complaint. *Id.* After Whirlpool received the pre-filing demand, the Parties conferred telephonically, and Whirlpool expressed a desire to conduct a full inspection of Plaintiffs' refrigerator, and the inspection occurred on August 11, 2023, at Plaintiffs' home in Livermore, California, with counsel for Whirlpool, a service tech, and an expert for the defense conducting the inspection. *Id.* ¶ 11.

Following the inspection of Plaintiffs' refrigerator, Whirlpool offered to compensate Plaintiffs for a replacement unit and related costs, but refused to discuss a class-wide resolution to resolve defects in other affected refrigerators. *Id.* ¶ 12. On August 23, 2023, Plaintiffs' Counsel sent a follow-up letter to request confirmation as to whether Whirlpool would resolve, correct, repair, replace, or otherwise rectify the Frost Clog Issue in its refrigerators on a class-wide basis. *Id.* Whirlpool ultimately indicated it was not willing to provide class-wide relief. *Id.*

On October 5, 2023, Plaintiffs filed their Complaint and alleged four claims against Whirlpool: (1) breach of implied warranty under the Song-Beverly Consumer Warranty Act; (2) breach of implied warranty under the California Commercial Code and California common law; (3) violation of California's Consumers Legal Remedies Act ("CLRA"); and (4) violation of California's Unfair Competition Law ("UCL"). *Id.* (citing Compl. ¶¶ 96–170). The Complaint identified 24 refrigerator models that Whirlpool designed, manufactured, distributed, and/or sold. *Id.* (citing Compl. ¶ 2). Among the 24 refrigerator models, there are three-door, four-door, and five-door models. *Id.*

On December 5, 2023, Whirlpool moved to dismiss each of Plaintiffs' claims. *See* ECF No. 30. On March 13, 2024, the Court denied Whirlpool's motion in its entirety. *See* ECF No. 49.

**B.    A Summary of the Mediation Efforts and Agreement to Settle.**

Starting in May 2024, Plaintiffs and Whirlpool scheduled a mediation for June 19, 2024, overseen by Hunter R. Hughes III, Esq. Joint Counsel Decl. ¶ 14. Before the mediation, the Parties exchanged informal discovery, including Whirlpool's repair claims data for the 3-, 4-, and 5-door models, which they each analyzed in connection with settlement discussions. *Id.* Plaintiffs' expert's analysis indicated a repair rate as high as 22.5% for the 3-door models—a high range according to Plaintiffs' expert. *Id.* The 4- and 5-door models did not have the same elevated repair rate. *Id.* Based on the data and the different overall architecture of the 3-door models, and because Plaintiffs own a 3-door model, the Parties were willing to resolve the Action only on behalf of purchasers of 3-door model refrigerators. *Id.* ¶ 16.

The arm's length mediation was productive but did not result in a settlement. *Id.* ¶ 15. Because the parties had progressed toward resolution, the Parties requested that the Court extend fact and expert discovery deadlines so settlement negotiations could be brought to a conclusion before resuming additional fact discovery. With Mr. Hughes' help, the Parties continued working through the summer of 2024 on potential settlement terms. In the weeks that followed, after considerable efforts to negotiate in good faith to reach a settlement, the Parties reached an impasse. On August 9, 2024, Mr. Hughes presented a mediator's proposal. On August 12, 2024, all Parties accepted the mediator's proposal, reaching agreement in principle to resolve this Action. *Id.* On August 13, 2024, the Parties notified the Court that the mediation efforts had resulted in a class-wide settlement of the Plaintiffs' claims. *Id.*

The Parties then turned to documenting the agreement set forth in the Settlement Agreement. *Id.* ¶¶ 17–22. As a condition of the Settlement, the Parties agreed to resolve only claims brought by three-door model refrigerator owners. *See* SA, Ex. 2 (Class Refrigerators covered by Settlement). As a further condition of the Settlement, the Settlement Class Representatives, on behalf of the proposed Settlement Class, agreed to release their claims and all potential claims that could have been brought based on the identical factual predicate as those alleged in the Complaint. *Id.* ¶ 16. Because the claims

of those who purchased four-door and five-door model refrigerators are not being settled, the claims of those consumers are not being released in the Settlement. *Id.*

## III.    SETTLEMENT TERMS

**A.    Settlement Class Definition and Estimated Settlement Class Size.**

The Settlement Class includes: "all persons who purchased (other than from resale) or [ acquired as part of the purchase or remodel of a home or received as a gift from a donor meeting those requirements] a Class Refrigerator within the United States and its territories from Defendant or its authorized resellers. Excluded from the Settlement Class are (i) officers, directors, and employees of Whirlpool or its parents, subsidiaries, or affiliates, (ii) attorneys appearing in this case and their household members, (iii) insurers of Settlement Class Members, (iv) subrogees or all entities claiming to be subrogated to the rights of a Class Refrigerator purchaser, a Class Refrigerator owner, or a Settlement Class Member, (v) persons who acquired an other-than-new Class Refrigerator, (vi) issuers or providers of extended warranties or service contracts for Class Refrigerators, and (vii) persons who timely and validly exercise their right to be removed from the Settlement class, as described below." SA at I.KK; *see also id.* at IV.A.1.

Material differences exist between the Settlement Class and the Class proposed in the Complaint. As noted above, the Class proposed in the Complaint included consumers who own 3-door, 4-door, or 5-door refrigerators—a total of 24 models. By contrast, the Settlement provides relief for consumers who own 3-door models. *See* SA, Ex. 2. There are 14 Whirlpool-manufactured 3-door French door refrigerators covered by the Settlement ("Class Refrigerators"):

| Class Refrigerator Model Number[5] | KFIS29BB\*\*; KFIS29PBM\*\*; KFIV29PCM\*\*; KRFF507E\*\*; KRFF707E\*\*; MFT2776DEE\*\*; MFT2776FEZ\*\*; MFT2778EE\*\*; MFT2976AE\*\*; MFT2977AE\*\*; WRF757SDE\*\*; WRF767SDEM\*\*; WRF989SDA\*\*; WRF990SLA\*\* |
|---|---|

Two further differences exist between the Settlement Class and the Class proposed in the Complaint: (1) the Settlement Class includes all persons who purchased a Class Refrigerator within the United States and its territories, whereas the proposed Class included only persons who purchased a Class

---

[5] As above, the \*\* symbol denotes a wildcard for color and engineering version of the model.

Refrigerator within the State of California; and (2) the Settlement Class excludes persons not excluded in the Complaint's Class. *Compare* SA at I.KK (defining Settlement Class), *with* Compl. ¶ 86.[6]

Based on discovery and analysis, including Whirlpool's representations, the Parties estimate the Settlement Class consists of approximately 354,000 class members. Joint Counsel Decl. ¶ 18.

**B.    Benefits to Settlement Class Members.**

The Settlement Agreement provides that for any Settlement Class Member who has experienced, and/or will experience in the future, one or more Frost Clog Issues within eight years after manufacture[7] of a Class Refrigerator, Whirlpool will reimburse or credit the Settlement Class Member for out-of-pocket expenses incurred to repair each Frost Clog Issue as follows: (1) in years one through three after manufacture, the Actual Cost of Repair up to a maximum of $300 per Paid Qualifying Repair; (2) in years four through six after manufacture, the Actual Cost of Repair up to a maximum of $225 per Paid Qualifying Repair; and (3) in years seven or eight after manufacture, the Actual Cost of Repair up to a maximum of $150 per Paid Qualifying Repair. SA at IV.A–B. Class Members who previously received compensation from Whirlpool for a Frost Clog Issue will have such reimbursement or credit reduced by the cash-equivalent amount of such compensation. SA at IV.C.

In addition, the Settlement Agreement provides that for any Settlement Class Member who has experienced two or more Frost Clog Issues within six years after manufacture of a Class Refrigerator and then replaced that refrigerator, Whirlpool will reimburse a percentage of the Settlement Class Member's original purchase price of the Class Refrigerator as follows: (1) in years one through three after manufacture, 75% of the original purchase price of the Refrigerator if Whirlpool's records show the Settlement Class Member contacted Whirlpool to request replacement before paying out-of-pocket for the same; otherwise, 50% of the Refrigerators' original purchase price; and (2) in years four through six after manufacture, 45% of the original purchase price of the Refrigerator if Whirlpool's records

---

[6] Plaintiffs defined the Class as "all persons who purchased, other than from resale, a Class Refrigerator within the State of California from Defendant or its authorized retailers." Compl. ¶ 86.

[7] For ease of administration, entitlement to relief is based on the date of manufacture. However, any Settlement Class Member whose purchase date is later than the date of manufacture, if such difference would affect entitlement to relief, may provide documentary proof showing their purchase date. Class Members who provide sufficient documentary proof of their purchase date shall have their settlement benefit eligibility calculated according to their documented purchase or delivery date, whichever is later. SA at IV.A.2.f. All references to date of manufacture are subject to this provision.

show the Settlement Class Member contacted Whirlpool to request replacement before paying out-of-pocket for the same; otherwise, 25% of the Refrigerators' original purchase price. SA at IV.A.3.b. Class Members who previously received from Whirlpool a full refund for or free exchange of their Class Refrigerator will not be entitled to compensation (other than for any repair of a Frost Clog Issue related to a Class Refrigerator as outlined above). SA at IV.D.

Finally, as part of the Settlement Agreement, Whirlpool will pay for notice and administration of the Class Settlement, which the Angeion Group projects to be around $200,000. SA at V.B; *see also* Admin. Decl. at ¶ 53.

The Settlement is valuable. By agreeing to pay for repairs of Frost Clog Issues that occur within eight years after manufacture of the Class Refrigerators, Whirlpool is essentially agreeing to an extended service plan for the entire Settlement Class to repair Frost Clog Issues for an additional seven years beyond the Class Refrigerators' original one-year warranties. Bernatowicz Decl. ¶¶ 12–14. One way to value the Settlement is to look at what such a service plan would cost on the open market. Plaintiffs' expert has valued this extended service plan at $153.08 per Class Refrigerator, representing an appropriate portion of the market cost of a full seven-year extended service plan. *Id.* at ¶ 15. Plaintiffs' expert valued the extended service plan for the class at $54.1 million. *Id.* at ¶¶ 16–19.

Plaintiffs' expert also estimated the maximum amount Whirlpool will potentially pay out for repairs and/or replacements of the Class Refrigerators under the Settlement. As stated above, Plaintiff's expert reviewed the repair data for the 3-door model refrigerators and estimated a repair rate due to Frost Clog Issues of up to 22.5%. *Id.* at ¶ 23. Plaintiffs' expert determined the distribution of Frost Clog repairs by year and calculated the maximum repair benefits by year based on the estimated repair rate range and the Settlement Agreement's terms. *Id.* at ¶¶ 24–25. Based on Plaintiffs' expert's calculations, Whirlpool will potentially payout a maximum of $13.2 to $22.5 million in repair costs. *Id.* at ¶ 25. Plaintiffs' expert also calculated the maximum replacement benefit to be between $10.3 and $20.3 million. *Id.* at ¶ 34. Thus, Whirlpool's estimated maximum potential payout, assuming 100% participation by class members, is $23.6 to $42.8 million. *Id.* at ¶ 35. Notably, Plaintiffs' expert determined the average cost to repair a Frost Clog Issue to be $272.78, *id.* at ¶ 20, which is less than

the available payment under the Settlement for Frost Clog repairs in the first three years of ownership and exceeds the available payment for Frost Clogs in the next three years by less than 20%.

Finally, Angeion Group, the proposed Settlement Administrator, projects a claims rate of 0.5 to 1.5% of the Settlement Class, which consists of approximately 354,000 members. Admin. Decl. ¶ 50. However, given the estimated repair rate of the Class Refrigerators due to Frost Clog Issues of 13.6% to 22.5%, the projected 1,770 to 5,310 claims would actually represent 2.2% to 11.0% of the estimated Class Refrigerators impacted by Frost Clog Issues (13.6 to 22.5 of 354,000 or 48,144 to 79,650 Class Refrigerators). Based on these claim rates, Whirlpool could be expected to payout somewhere between $519,200 (2.2% of $23.4 million) and $4,708,000 (11.0% of $42.8 million).

## C.    Class Counsel's Attorney Fees and Expenses and the Settlement Class Representatives' Service Awards.

Plaintiffs' Counsel will petition the Court for an award of attorneys' fees, litigation costs, and service awards up to a combined total of $1,160,000.00. The Settlement Class and the Court will have a full opportunity to consider the appropriate fees as part of the final approval process. There is no "clear sailing" agreement, and final approval is not contingent upon approval of the requested attorneys' fees, costs, or service awards. SA at VIII.B, VIII.F. The Settlement Agreement is also non-reversionary: under no circumstances will Whirlpool receive any of the settlement funds back, even if the Court does not award the requested fees, litigation costs, and service awards. SA at VIII.G. The combined requested total will include requested reimbursement for costs associated with the retention of experts, mediation fees, and all other costs incurred during the Action. The current lodestar, as set forth in the Joint Counsel Declaration, is approximately $1,207,863.75. Joint Counsel Decl. ¶ 33. As Plaintiffs' Counsel intend to request a total of $1,160,000, there is no multiplier in this matter, or if a multiplier were calculated, it would be fractional. Plaintiffs' Counsel will submit final figures with further detail concerning the hours worked at various stages of this Lawsuit in their forthcoming motion for attorneys' fees and expenses. *Id.* ¶ 34.

Under the Settlement, Plaintiffs' Counsel will seek approval of Service Awards of up to, but not exceeding, $5,000 for each Settlement Class Representative. SA at VIII.D. Throughout the course of the Lawsuit and during the Parties' negotiations, the Plaintiffs opened their home to Whirlpool counsel and technicians to conduct a full day inspection of the refrigerator in their kitchen, collected

and produced documents, reviewed and approved the Complaint and other major filings, maintained contact with Class Counsel, stayed abreast of settlement negotiations and advised on settlement of this Lawsuit, including rejecting substantial offers of individual settlement in favor of achieving class-wide resolution of the claims. Joint Counsel Decl. ¶ 32. Paperno Decl. ¶¶ 3–5; Gibbany Decl. ¶¶ 3–5. The Settlement is not contingent upon approval of the Service Awards to Settlement Class Representatives, and the Settlement Class and the Court will have a full opportunity to evaluate the request for such awards as part of the final approval process. SA at VIII.F.

**D.     The Release Satisfies the Ninth Circuit's "identical factual predicate" Requirement.**

The Settlement Agreement's Release only covers those claims alleged in the Lawsuit and claims based on the identical factual predicate underlying the claims alleged in the Lawsuit. The Released Claims only include those past and future claims that "arise from or relate to any of the defects, malfunctions, or inadequacies of the Class Refrigerators that are alleged or could have been alleged in the Lawsuit arising out of or relating to a Frost Clog Issue including without limitation all claims for out-of-pocket expense, diminution-in-value, benefit-of-the-bargain, cost-of-repair, cost-of-replacement, statutory, or premium-price damages or restitution …." SA at IX.A. The Released Claims do not include "claims for personal injury or for damage to property other than to the Class Refrigerator itself." SA at IX.B. The Releasees include: (i) Whirlpool "together with its predecessors and successors in interest, parents, subsidiaries, affiliates, and assigns;" (ii) Whirlpool's "past, present, and future officers, directors, agents, representatives, servants, employees, attorneys, and insurers;" and (iii) the "distributors, retailers, suppliers, and other entities who were or are in the chain of design, testing, manufacture, assembly, distribution, marketing, sale, installation, or servicing of the Class Refrigerators." SA at I.GG.

In sum, the Released Claims only include claims against Whirlpool and other relevant nonparties for economic damages and property damage to the Class Refrigerator itself that are based on the Lawsuit's same underlying factual predicate—issues with frost buildup and/or cooling failures in the Class Refrigerators' refrigeration compartment related to frost buildup on the refrigeration compartment's evaporator. Thus, the Settlement's Released Claims are all based on the complaint's identical factual predicate. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir.

2006) ("[A] federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action. A class settlement may also release factually related claims against parties not named as defendants…." (citations omitted and alterations adopted)); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

Furthermore, the Parties know of no other case that will be affected by this Settlement.

**E.    The Proposed Plan of Allocation**

In cases in which a common fund has been created for the benefit of the entire class, parties develop a "Plan of Allocation" to determine how the settlement administrator should distribute funds to claimants, varying depending on the number of claims and criteria that apply to each claimant. *See, e.g.*, *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-02033-YGR, 2024 WL 3297079, at *11 (N.D. Cal. June 3, 2024) (defining "Plan of Allocation" as "the plan for allocating the Net Settlement Fund as set forth in the Notice" and explaining that the "Claims Administrator shall calculate the claims of Authorized Claimants in accordance with the Plan of Allocation"). As this is not a common fund case, the Parties did not develop a Plan of Allocation. Instead, the Settlement sets forth clear guidelines as to how much financial reimbursement each Settlement Class Member is entitled to, based on documented repair and replacement costs, if they submit a Valid Claim. *See* SA at IV. There is no dollar cap on the amount of repair and replacement costs available to Settlement Class Members who submit valid claims. *Id.* at X.

**F.    Proposed Claim Form Process**

To receive monetary benefits for Past Frost Clog Issues, Settlement Class Members are required to submit a claim form. Members will have 180 days from the Notice Date to submit claims online. SA at IV.E, V.J. Claim forms must include:

(1) A valid Class Refrigerator model and serial number combination and documentary proof that the claimant either purchased a Refrigerator new or acquired it as part of the purchase or remodel of a home or as a gift. Sufficient documentary proof includes but is not limited to purchase receipts, credit card statements, and warranty registrations. If no such proof is available, then the claimant shall provide a claim-form declaration, signed under oath, that the claimant cannot locate sufficient documentary proof but that the Claimant meets the Settlement Class Definition. SA at IV.A.1.

(2) Documentary proof the claimant experienced a Frost Clog Issue within eight years after manufacture for purposes of a Paid Qualifying Repair or that the claimant experienced two or more Frost Clog Issues within six years after manufacture for purposes of a Paid Qualifying Replacement. Sufficient documentary proof includes, but is not limited to service tickets, service estimates, and/or service receipts. If no such documentary proof is available, the claimant shall provide a claim-form declaration, signed under oath, attesting that they experienced a Frost Clog Issue within eight and/or six years after manufacture of the Class Refrigerator. SA at IV.A.2.b.

(3) Documentary proof that the claimant experienced a Paid Qualifying Repair includes, but is not limited to, service tickets, service receipts, cancelled checks, and/or credit card statements. SA at IV.A.2.c. Documentary proof that the claimant actually experienced a Paid Qualifying Replacement, Frost Clog Issues requiring two or more repairs before the Qualifying Replacement, includes, but is not limited to, such as purchase receipts, credit card statements, and/or other documents showing the amount paid out-of-pocket. SA at IV.A.2. e,f.

To receive monetary benefits for Post-Notice Frost Clog Issues, Settlement Class Members are required to contact Whirlpool within 90 days of the Frost Clog Issue to schedule their repairs and provide the same documentary proof outlined in subsections (1) and (2) above. SA at IV.B.

Before denying claims because of insufficient documentary proof, the Settlement Administrator shall send, by email and text if available or first-class United States Mail if email and text are not available, a written Notice of Claim Deficiency to the Settlement Class Member identifying the insufficient proof that may cause the claim to be denied and giving the Settlement Class Member no more than 30 days to cure the deficiency. SA at V.D. Moreover, if any Settlement Class Member disputes the Settlement Administrator's denial of a claim for any reason, the Settlement Administrator shall send the claim to Whirlpool and Class Counsel for Whirlpool to determine the claim's validity. Whirlpool's determination shall be final and binding unless Class Counsel, within 30 days of notification of Whirlpool's determination, contests Whirlpool's determination by first attempting to resolve the claim in dispute directly with Whirlpool's counsel and, if those efforts are unsuccessful, by presenting the matter for determination to the Court within 30 days of the completion of Whirlpool's and Class Counsel's conferral. In the case of Whirlpool's denial of a claim for a Post-Notice Frost Clog

Issue for any reason, Class Counsel shall have the right to challenge the denial according to the same procedures above. SA at V.E.

Claim forms are being required for this settlement to ensure settlement funds are directed to individuals who have suffered the Frost Clog Issue and have experienced out-of-pocket expenses because of the defect, and to prevent diversion of settlement funds to individuals with other concerns about their refrigerators' performance, or to scammers. The claim forms are designed to be user-friendly. The first piece of required information is the refrigerator's model number and serial number to confirm the refrigerator is a Class Refrigerator, consistent with Whirlpool's records. The claim forms then ask two simple questions and request the documentation or signed declarations outlined above. SA, Ex. 1 [Replacement Claim Form – Instructions and Past Frost Clog Claim Form - Instructions]. Moreover, the claims process is designed to be manageable and to maximize participation in the settlement. As stated above, the Angeion Group, the proposed Settlement Administrator, projects a claims rate of 0.5–1.5% of the Settlement Class, which consists of approximately 354,000 members. Admin. Decl. ¶ 50. However, as explained above, given the estimated repair rate of the Class Refrigerators due to Frost Clog Issues of 13.6% to 22.5%, Joint Counsel Decl. ¶ 29, the projected 3,540 claims (1% of 354,000) would actually represent 4.4% to 7.4% of the estimated Class Refrigerators impacted by Frost Clog Issues (13.6–22.5% of 354,000 or 48,144–79,650 Class Refrigerators).

## IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Under Rule 23(e)(2), before approving a class action settlement, a district court must conclude the settlement is "fair, reasonable, and adequate." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 780 (9th Cir. 2022) (quoting Fed. R. Civ. P. 23(e)(2)). Under Rule 23(e)(2), courts must consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate"; and (4) "the proposal treats class members equitably." Fed. R. Civ. P. 23(e)(2). Here, because the Settlement provides fair, reasonable, and adequate relief for all Settlement Class Members, the Settlement meets Rule 23(e)(2)'s requirements.

**A.    Settlement Class Representatives and Plaintiffs' Counsel Have Adequately Represented the Interests of the Settlement Class.**

Nancy Paperno and Robert Gibbany do not have any interests antagonistic to the other Settlement Class Members, whose interests they will continue to vigorously protect. Plaintiffs have volunteered to represent the Class and have participated actively in the Action, and they remain committed to vigorously prosecuting this case in the best interests of the Settlement Class. This is evidenced by the fact that after Plaintiffs retained counsel, Whirlpool repeatedly sought to provide them with a new, replacement refrigerator and additional cash to settle their individual claims, and they rejected the offer on each occasion. Their participation easily meets the adequacy requirement. *See Trosper v. Styker Corp.*, No. 13-cv-0607-LHK, 2014 WL 4145448, at *12 (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a rudimentary understanding of the present action and … a demonstrated willingness to assist counsel in the prosecution of the litigation.") (citation omitted).

Further, Plaintiffs have retained proposed class counsel with significant experience prosecuting consumer protection class actions and complex litigation in this District and nationwide. *See* Joint Counsel Decl. ¶¶ 23–26. They devoted the resources necessary to see this case through despite significant risk. *Id.* ¶¶ 31–35. Plaintiffs' Counsel's work began 17 months before filing suit and has included selecting appropriate representative plaintiffs, preparing the Complaint, defeating Whirlpool's motion to dismiss, consulting with experts, evaluating ongoing informal discovery, preparing for and attending mediation (including analyzing documents produced in advance of mediation), evaluating options for settlement benefits that would meet the Settlement Class's needs, and reaching the proposed Settlement. *Id.* ¶¶ 8–13. They have been guided by the Settlement Class Members' interests throughout the management of this case and present this Settlement as in their best interests. *Id.* ¶¶ 17–22.

**B.    The Settlement Agreement Was Negotiated at Arm's Length.**

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving class action settlements. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "Class settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 375 (N.D. Cal. 2021) (citation omitted). Plaintiffs undertook a substantial pre-filing investigation before

filing the Complaint, including interviewing potential plaintiffs and reviewing materials such as Whirlpool's TSPs, message board posts, web pages, and marketing materials, as well as articles about the industry, as well as engaging subject matter consultants to analyze the viability of Plaintiffs' claims. Joint Counsel Decl. ¶ 9. Plaintiffs acquired a wide range of information about the Class Refrigerators and their cooling failures, allowing them to reasonably evaluate their claims' strengths and weaknesses and balance the benefits of settlement against the risks of continued litigation. *Id.* ¶ 4. Plaintiffs' Counsel also sought and received extensive informal discovery from Whirlpool in preparation of settlement negotiations. *Id.* ¶ 14. Such discovery included Whirlpool's confidential production of complaints data, showing that consumers and warranty-service providers began contacting Whirlpool about the Class Refrigerators' issues with cooling caused by frost and ice build-up as early as 2013, and further data to help Plaintiffs' expert reasonably estimate the rate at which the Class Refrigerators experienced such cooling failures. *Id.* And "[i]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988, at *8 (N.D. Cal. July 8, 2019) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Finally, the Parties reached the Settlement under Mr. Hughes' supervision and based it on Mr. Hughes' mediator's proposal. Joint Counsel Decl. ¶ 15. The Settlement thus resulted from serious, informed, and non-collusive negotiations. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007).

### 1.    The Settlement Also Satisfies the *Bluetooth* Factors.

Further, pre- and post-class certification, courts must "scrutinize agreements for 'subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.* ("*Bluetooth*"), 654 F.3d 935, 947 (9th Cir. 2011)). The three *Bluetooth* factors are: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) when the payment of attorneys' fees is "separate and apart from class funds"; and (3) when the parties arrange for benefits that are not

1   awarded to revert to the defendants rather than being added to the class fund. *Bluetooth*, 654 F.3d at

2   947. Here, the *Bluetooth* factors further support granting preliminary approval.

3       The first *Bluetooth* factor is not present here. All class members will receive the benefit of an

4   extended service plan. Plaintiffs' expert has valued this extended service plan at $153.08 per Class

5   Refrigerator, representing an appropriate portion of the estimated market cost of a full seven-year

6   extended (in addition to the one-year original warranty) service plan. Bernatowicz Decl. at ¶¶ 14–15.

7   Plaintiffs' expert valued the extended service plan for the entire class at $55.5 million. As for the value

8   of the claims made for reimbursement of out-of-pocket repair and replacement costs, with an estimated

9   claims rate of 1%, it is anticipated that Settlement Class Members will receive between $1.03 million

10  at the low end (4.4% of $23.4 million) and $3.16 million at the high end (7.4% of $42.8 million). The

11  claims rate may well exceed that value, as the Settlement provides for direct notice and publication

12  notice to Settlement Class Members. *See infra* Section VI.A.

13      As for fees, Plaintiffs' Counsel intend to request fees, costs, and service awards in the amount

14  of $1,160,000. Joint Counsel Decl. ¶ 31. Based on the settlement benefits detailed above, if Plaintiffs'

15  Counsel is awarded this full amount, they will not receive a disproportionate share of the Settlement.

16  The second *Bluetooth* factor also takes into account "clear sailing agreements" in which a defendant

17  agrees not to challenge agreed-upon fees for class counsel. *See Briseño*, 998 F.3d at 1026–27 ("A clear

18  sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in

19  exchange for counsel accepting a lower amount for the class members."). No such agreement exists

20  here, and final approval is not contingent upon approval of the requested fees, costs and expenses. SA

21  at VIII.B, VIII.F. The third factor is also not present because fees not awarded will not revert to

22  Whirlpool; instead, they will be awarded to a *cy pres* recipient. SA at VIII.G.

23  **C.    The Relief Offered in the Settlement Is More Than Adequate.**

24      The Settlement is valuable. The Settlement Agreement's terms essentially constitute an eight-

25  year extended service plan[8] to repair Frost Clog Issues, which Plaintiffs' expert valued at $54.1 million

26  for the Settlement Class. Bernatowicz Decl. at ¶¶ 12–19. Alternatively, Whirlpool's maximum

27  potential payout under the Settlement Agreement for repair and replacement costs is $23.6 to $42.8

28

---

[8] The settlement extends repair benefits from one year (the present warranty) to eight years.

1   million. *Id.* at ¶¶ 20–35. As explained above, *see supra* Section III.B, based on Angeion Group's

2   projected claims rate of 0.5 to 1.5%, which represents 2.2% to 11.0% of the estimated Class

3   Refrigerators impacted by Frost Clog Issues, Whirlpool could be expected to payout somewhere

4   between $519,200 (2.2% of $23.4 million) and $4,708,000 (11.0% of $42.8 million).

5           The Settlement relief also compares very favorably to other consumer appliance settlements.

6   *See* Case Comparison Chart, Joint Counsel Decl., Ex. B (comparing the Class Settlement to settlement

7   terms in: *Cleveland v. Whirlpool Corp.*, No. 0:20-cv-01906-WMM-KMM (D. Minn. June 23, 2022)

8   ECF No. 89; *Corzine v. Whirlpool Corp.*, No. 15-cv-05764 (N.D. Cal. Dec. 31, 2019), ECF No. 134;

9   and *Chambers v. Whirlpool Corp.* No. 8:11-cv-01733-FMO-JCG (C.D. Cal. Nov. 15, 2021), ECF No.

10  418); *see also* Joint Counsel Decl. ¶ 30. While these three other settlements offered similar relief to

11  consumers—reimbursement for repairs or replacement of their appliances, this Settlement the same or

12  better cash relief for repair or replacement. *See id.*

13          **1.    The Strengths and Risks of Plaintiffs' Claims**

14          Plaintiffs believe their claims are meritorious, and their claims' strength is a critical factor that

15  drove negotiations and the proposed Settlement Agreement. Nevertheless, Plaintiffs face substantial

16  risks that could decrease the amount of recovery—or even defeat recovery on a class-wide basis.[9]

17          First, although Plaintiffs believe a class would be certified for at least some, if not all, of their

18  claims, Plaintiffs recognize the significant risk of an adverse class certification ruling by this Court, the

19  Ninth Circuit, or the Supreme Court. For certain claims, Whirlpool might successfully argue that

20  individualized issues would predominate. Further, throughout the Lawsuit, Whirlpool has contended

21  Plaintiffs' defect theory is mistaken and that the absence of a defrost heater on Settlement Class

22  Representatives' refrigerator did not cause their refrigerator's Frost Clog Issues. Joint Counsel Decl.

23  ¶ 4. Should the Action continue, there is a risk discovery will not support Plaintiffs' defect theory or

24  that this Court, or an appellate court, could disagree that the evidence supports Plaintiffs' defect theory.

25  Varying causes for the Frost Clog Issues could defeat class certification. *See In re Arris Cable Modem*

26  ─────────────────────

27  [9] Plaintiffs do not analyze punitive damages at this stage, even though some claims allow for them.
    Plaintiffs would not argue against imposing punitive damages. Rather, punitive damages are inherently
    unpredictable and discretionary; as such, they typically play a limited role in determining the fairness

28  of a settlement. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL
    No. 2672 CRB (JSC), 2017 WL 2212783, at *24 (N.D. Cal. May 17, 2017).

*Consumer Litig.*, 327 F.R.D. 334, 365 (N.D. Cal. 2018) (explaining, in the context of UCL and CLRA claims, that if "there is a mismatch between the alleged defects and the alleged misrepresentations," then "Plaintiffs' claims would fail on a class-wide basis"). And even if Plaintiffs successfully certified one or more classes, there would be a risk that the Court could later decertify the class. *See In re Netflix Priv. Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.").

Second, in addition to the claim-specific risks described below, some damages may be duplicative. While contrary arguments exist, Whirlpool could argue damages for the consumer protection claims and the breach of implied warranty claims compensate Plaintiffs for the same injuries sustained from owning a Class Refrigerator. If that argument succeeds, damages on the claims may not be stacked on top of each other. *See, e.g.*, *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1032 (9th Cir. 1999) ("[A] plaintiff may not receive multiple awards for the same item of damage.").

### a.    Comparing the Strengths and Risks of the Implied Warranty Claims.

Plaintiffs bring two breach of implied warranty claims—under the Song-Beverly Consumer Warranty Act and under the California Commercial Code and California common law—based on Whirlpool impliedly warranting to Plaintiffs and Settlement Class Members that the Class Refrigerators were of merchantable quality and fit for their ordinary purpose. Compl. ¶¶ 96–127. Under the Song-Beverly Act and the California Commercial Code, there is an implied warranty of merchantability that consumer goods "[a]re fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a)(2); Cal. Com. Code § 2314(2)(c). In support of these claims, and given the Class Refrigerators' widespread documented cooling issues, Plaintiffs believe they could prove the Class Refrigerators were unfit for their ordinary purpose of chilling food.

Conversely, there remain significant risks in continuing to litigate these claims. With respect to Whirlpool's argument that the implied warranty claims are untimely, Plaintiffs alleged that Whirlpool's fraudulent concealment tolled the statute of limitations. Compl. ¶¶ 74–85. Should this Action continue, discovery will reveal the extent to which Whirlpool's deception tolls the statute of limitations. Such discovery could help or hinder these claims. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2010) (fraudulent concealment is fact-intensive and, for that reason,

requires an opportunity for discovery for plaintiffs to produce evidence of fraudulent concealment). Second, the Song-Bervely Act provides for a one-year implied warranty of merchantability. Cal. Civ. Code § 1791.1(c). Settlement Class Representatives alleged that their refrigerator began to experience cooling failures 22 months after they bought it. Compl. ¶¶ 49, 52. As a result, this Court, or an appellate court, could rule at a later juncture that the implied warranty period expired. The benefit Settlement Class Members would receive under the Settlement appropriately accounts for the risks associated with continuing to litigate Plaintiffs' implied warranty claims.

### b. Comparing the Strengths and Risks of the Consumer Protection Claims.

Plaintiffs also bring two consumer protection claims alleging Whirlpool engaged in unfair and deceptive acts and practices in violation of California's CLRA and California's UCL in connection with the marketing and sale of the Class Refrigerators that Whirlpool knew were prone to cooling failures. Compl. ¶¶ 128–70. In its order denying the motion to dismiss, the Court ruled the Complaint alleged Whirlpool's pre-sale knowledge based on the consumer complaints and the TSPs, together were "sufficient to support an inference that Whirlpool knew that the refrigerators had a persistent problem with frost and ice build-up on the evaporators before the sale to the plaintiffs." ECF No. 49 at 4. Like implied warranty claims, these claims' success may turn on the discovery received and Plaintiffs' ability to prove Whirlpool's pre-sale knowledge.

### 2. Further Litigation Would Be Expensive, Complex, and Lengthy.

Continuing this Action would be expensive, complex, uncertain, and lengthy. And "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002). First, there is the risk of not prevailing on class certification. Plaintiffs believe they can satisfy all the requirements of Rule 23 to certify a class of persons who purchased the refrigerators, but Whirlpool asserts the cooling issues Plaintiffs and the putative class experienced can arise from multiple potential causes, which could potentially defeat commonality and predominance. Plaintiffs' expert would also need to conduct a costly conjoint analysis to measure consumers' preferences for a refrigerator without the Frost Clog Issue and demonstrate that class-wide damages can be calculated. Second, there is the risk of receiving unfavorable rulings at summary judgment or an adverse jury

verdict at trial. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 664 (S.D.N.Y. 2015) (approving settlement and noting verdict could depend on factors like "the persuasiveness of each side's expert witnesses" and "the justifications advanced by" the defendant for its practices). Indeed, explaining the Class Refrigerators' complex mechanics and the number of issues involved would make presenting the case to the trier of fact and proving damages on a class-wide basis challenging, and it is possible a jury might not reach a unanimous verdict on all issues. While Plaintiffs believe they can present a compelling case to a jury, a wide range of potential outcomes exist. Finally, even if Plaintiffs obtained a favorable verdict, Whirlpool would still have arguments for overturning the verdict.

Resolving the action at this time saves the Parties the uncertainty and expense of additional litigation and substantially benefits the Class by providing a recovery that is certain and immediate, without having to face the risks inherent with protracted litigation. Nearly all class action settlements reflect tradeoffs and difficult choices. Here, the total value of the benefits under the proposed Settlement Agreement appropriately accounts for the risks of further litigation.

**D.    The Settlement Treats Settlement Class Members Equitably.**

The Settlement provides equal access to financial reimbursement for all Settlement Class Members who timely submit Valid Claims. Each Settlement Class Member's monetary benefit will correspond to proof of prior out-of-pocket repair and/or replacement costs, with those who incurred greater costs receiving greater reimbursement. The Settlement treats Class Members equitably.

## V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

**A.    The Settlement Class Satisfies the Rule 23(a) Prerequisites.[10]**

**1.    The Class is Sufficiently Numerous.**

First, a putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g.*, *Lagunas v. Young Adult Inst., Inc.*, No. 23-cv-00654-RS, 2024 WL 1025121, at *3 (N.D. Cal. Mar. 8, 2024) (class of 299 employees); *del Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 592 (N.D. Cal. 2008) (noting a class of 1,000 members clearly satisfies numerosity). The class here is made up of an estimated 354,000 individuals. Joint Counsel Decl. ¶ 18.

---

[10] Rule 23(a)'s prerequisite of adequacy of representation is addressed above. *See supra* Section IV.A.

### 2. There Are Common Questions of Law and of Fact.

Second, commonality requires that the action involve "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes* ("*Wal-Mart*"), 564 U.S. 338, 359 (2011)). Where claims "derive from a common core of salient facts, and share many common legal issues," commonality is met. *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006). This action presents many common legal and factual questions that are subject to class-wide resolution.[11] All members of the potential class derive their claims from the same circumstances. They each purchased a Class Refrigerator that contained the same flawed design. Whirlpool's conduct—manufacturing these refrigerators and continuing to market and sell them, despite knowing that frost or ice routinely forms on the refrigeration compartment evaporator for these models—is identical for and forms the basis of each Settlement Class Member's claim. This uniform conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *Wal-Mart*, 564 U.S. at 350. These facts more than suffice to meet the commonality requirement.

### 3. The Settlement Class Representatives' Claims are Typical of Settlement Class Members' Claims.

Third, Settlement Class Representatives' claims must be typical of the claims of the proposed class. Fed. R. Civ. P. 23(a)(3). "The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018) (citation omitted). Here, Plaintiffs suffered the same injury as the other putative class members, and their refrigerator was plagued by the same issues as the other Class Refrigerators. Settlement Class Members' refrigerators experienced analogous problems with frost and ice build-up on the refrigeration compartment's evaporator, as shown by the thousands of consumer complaints Whirlpool has received about this problem. Nothing about Whirlpool's conduct is unique to Plaintiffs. As stated above, Whirlpool's conduct across the board impacted Plaintiffs and

---

[11] *See* Compl. ¶ 90 (identifying five common questions of law and fact).

Settlement Class Members in the same way. Because Plaintiffs' allegations involve the "same course of conduct," which is "not unique to the named plaintiffs," typicality is satisfied here. *Valliere v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2020 WL 13505042, at \*5 (N.D. Cal. June 26, 2020).

**B.     The Settlement Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3)'s predominance and superiority requirements are satisfied here.

**1.     Common Issues of Law and Fact Predominate**

Rule 23(b)(3)'s predominance inquiry focuses on whether the "common questions present a significant aspect of the case and … can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation omitted). Even if just one common question predominates, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Questions common to class members predominate over any questions affecting only individual members. Whirlpool's same conduct forms the basis for Plaintiffs' breach of implied warranty and California consumer protection law claims. The Settlement Class satisfies the predominance requirement through common, generalized proof for each of these four claims. Should Plaintiffs try this case before a jury, Plaintiffs would prove, among other things, that: (1) the Class Refrigerators all lack a defrost heater accompanying the refrigeration compartment's evaporator; (2) this design causes the Class Refrigerators to periodically fail; and (3) Whirlpool knew the Class Refrigerators were susceptible to periodic cooling failures and continued to manufacture, market, distribute, and sell the Class Refrigerators to unwitting consumers. Each Settlement Class Member suffered the same conduct—being sold a defective refrigerator manufactured by Whirlpool. The facts supporting each Settlement Class Member's claims will be uniform as Whirlpool's conduct was consistent for the entire Settlement Class. Some individual damage calculations may be necessary, depending on factors such as when the Settlement Class Member purchased their refrigerator, how often it failed, and what repairs Whirlpool provided, but when possible individualized questions relate to damages and not liability, common issues to the class may still predominate and certification is appropriate. *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 943 (9th Cir. 2019) ("[T]he need for individual damages calculations does not, alone, defeat class certification.") (citation omitted).

### 2.     Class Treatment is Superior

Rule 23(b)(3)'s superiority element requires a district court to determine "whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. The sheer number of potential separate trials, were they to be pursued, also favors certification. Absent the class action device, Settlement Class Members would need to individually prosecute their own separate actions, which would burden courts, require the repeated adjudications of the same legal issues, thereby creating a potential for inconsistent or contradictory judgments, and would be prohibitively costly for individual litigants. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. The superiority of class treatment is met here.

## VI.     THE PROPOSED SETTLEMENT ADMINISTRATOR, NOTICE PROGRAM, AND PROCESS FOR OPT-OUTS AND OBJECTIONS SHOULD BE APPROVED

### A.     The Settlement Administrator

### 1.     The Parties Propose Appointing Angeion Group as Settlement Administrator.

The Parties propose appointing the Angeion Group as the Settlement Administrator. They do so after evaluating the bids from three prospective settlement administrators. Joint Counsel Decl. ¶ 37. The Parties selected Angeion Group based on the specificity of the Notice proposal, including the digital media campaign, the cost, and Angeion Group's past experience administering similar consumer settlements. Collectively, Plaintiffs' Counsel have used Angeion Group as a settlement administrator on one occasion in the past two years. Angeion Group advised the total estimated cost of notice and administration will be $191,752 over 24 months, which Whirlpool will pay. The estimated costs are reasonable compared to the Settlement's value and the Settlement Class size.

### 2.     The Settlement Administrator's Estimated Claims Rate

Estimating a claims rate is complex. Angeion Group has estimated that there will be a 0.5–15% claims rate in this matter (or 1,770 to 5,310 claims) based on its experience in other consumer appliance

cases. Admin. Decl. ¶ 50. The Notice Plan proposed here is intended to maximize the claims rate and encourage Settlement Class member participation. *Id.* ¶¶ 54–57.

**B.    The Proposed Notice Plan**

Consistent with this District's *Procedural Guidance for Class Action Settlements*, the proposed notice plan is the best notice practicable under the circumstances and provides individual notice to all Class Members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). The notice plan was designed in consultation with the proposed Settlement Administrator and incorporates direct notice via email to all valid email addresses known to Whirlpool or by text to phone numbers known to Whirlpool. SA at V.H. The Settlement Administrator will utilize a reverse look-up service to obtain additional email addresses and mobile phone numbers for Settlement Class Members for whom Whirlpool has only a physical address, or whose email and text notice bounce back from an undeliverable address or invalid or non-mobile phone number. *Id.* The Settlement Administrator will mail a Summary Notice to each Settlement Class Member for whom an address can be found in Whirlpool's databases but who does not have an identifiable email address or mobile phone number. *Id.* The Settlement Administrator will perform a national change of address search and forward notice packages returned by the U.S. Postal Service with a forwarding address. *Id.*

The long form Notice and Summary Notice contain all required information, including how to object or opt out, when to object or opt out, and the date set for the final approval hearing. The Notices are drafted in clear, accessible language, and in a format that satisfies due process. SA, Exs. 3; 5; 6.

In addition, the Settlement Administrator will provide publication notice to the Settlement Class using appropriate media outlets, including social media outlets. SA at V.I. Angeion Group, the proposed Settlement Administrator, proposes using display ads, paid social media ads (Facebook and Instagram), and search engine marketing and projects its recommended media plan will deliver a 70.01% reach of the Class Members. Admin. Decl. ¶ 55. The Settlement Administrator will also create a Settlement Website with all necessary and pertinent information for Settlement Class Members, including the Claim Form, the FAQ, and information relating to relevant deadlines. The Website will also permit submitting claims online, including uploading any necessary documentation. SA at V.J.

1    The proposed notice plan meets or exceeds California's and federal law's requirements,

2    satisfies due process, and provides several means for Class Members to participate in the Settlement.

3    Therefore, Settling Parties respectfully request that the Court approve the Notice Plan provided in the

4    Settlement and order distribution of the proposed Notice as set forth in the Settlement Agreement.

5    **C.    Opt-Outs and Objections**

6    Any Class Member shall have the right to be excluded from the Settlement by providing a

7    written request postmarked no later than 91 days following the entry of the Preliminary Approval

8    Order. The notices (discussed above) shall provide instructions to Class Members who wish to exclude

9    themselves from the Settlement Class and set forth the deadline to do so. SA at VII.A. The Settlement

10    Administrator shall assign a unique identifier to each properly-submitted Request for Exclusion and

11    report the excluded Class Members to the Court. *Id.* Additionally, any Class Member who wishes to

12    oppose the reasonableness and fairness of the Settlement at the Fairness Hearing must file with the

13    Court a written objection stating the basis of the objection and the objection must also be served on

14    Class Counsel and counsel for Whirlpool by the stated deadline. SA at VII.D. The notices (discussed

15    above) will provide instructions for Class Members to properly submit objections and set forth all

16    required information and the deadline to do so. *Id.* The notices will also specify that the requirement to

17    file a written objection may be excused upon a showing of good cause and that the Court will require

18    only substantial compliance with the requirements for submitting an objection. *Id.*

19    **VII.    CONCLUSION**

20    The Settlement is substantial and fair and would provide immediate reimbursement relief for

21    those who have incurred documented costs for Paid Qualifying Repairs and/or Paid Qualifying

22    Replacements. For the three-door Class Refrigerator models, it achieves the Action's goal, benefits the

23    entire Settlement Class, and accounts for the risks and uncertainties of continued, vigorously contested

24    litigation. Plaintiffs respectfully request the Court preliminarily approve the Settlement, certify the

25    Settlement Class, appoint the undersigned as Class Counsel and Nancy Paperno and Robert Gibbany

26    as Settlement Class Representatives, order dissemination of Class Notice to Settlement Class Members

27    in accordance with the proposed Notice Plan, and set a date for the Final Approval Hearing.

28

Dated: October 30, 2024                    Respectfully Submitted,

                                           By: *s/ Laura R. Gerber*
                                           Laura R. Gerber (*Pro Hac Vice*)
                                           Michael Woerner (*Pro Hac Vice*)
                                           Andrew N. Lindsay (*Pro Hac Vice*)
                                           KELLER ROHRBACK L.L.P.
                                           1201 Third Avenue, Suite 3400
                                           Seattle, Washington 98101
                                           (206) 623-1900
                                           lgerber@kellerrohrback.com
                                           mwoerner@kellerrohrback.com
                                           alindsay@kellerrohrback.com

                                           Alison E. Chase (SBN 226976)
                                           KELLER ROHRBACK L.L.P.
                                           801 Garden Street, Suite 301
                                           Santa Barbara, California 93101
                                           (805) 456-1496
                                           achase@kellerrohrback.com

                                           Michael J. Brickman (*Pro Hac Vice*)
                                           James C. Bradley (*Pro Hac Vice*)
                                           Nina Fields Britt (*Pro Hac Vice*)
                                           Caleb M. Hodge (*Pro Hac Vice*)
                                           ROGERS, PATRICK, WESTBROOK &
                                           BRICKMAN, LLC
                                           1037 Chuck Dawley Blvd., Bldg. A
                                           Post Office Box 1007
                                           Mount Pleasant, South Carolina 29465
                                           (843) 727-6500
                                           mbrickman@rpwb.com
                                           jbradley@rpwb.com
                                           nfields@rpwb.com
                                           chodge@rpwb.com

                                           Kenneth Behrman (*Pro Hac Vice*)
                                           BEHRMAN LAW
                                           5855 Sandy Springs Circle, Suite 300
                                           Atlanta, Georgia 30328
                                           (770) 952-7770
                                           ken.behrman@behrmanlaw.com

                                           ***Attorneys for Plaintiffs and the Putative Class***

PROPOSED FINAL APPROVAL HEARING SCHEDULE

Plaintiffs' [Proposed] Order granting Preliminary Approval of Class Action Settlement, filed herewith, includes the following proposed schedule for the approval process:

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Whirlpool shall serve or cause to be served the notice required by the Class Action Fairness Act, 28 U.S.C. | 10 days following the filing of the Motion for Preliminary Approval |
| Settlement Administrator shall mail, email, and/or text the Summary Notice. | 42 days following the Preliminary Approval Order |
| Settlement Administrator shall publish the Publication Notice. | 49 days following the Preliminary Approval Order |
| Class Counsel shall file their Fee Petition, which shall also be posted on the Settlement Website. | 56 days following the Preliminary Approval Order |
| Settlement Administrator shall file with the Court a declaration of compliance with the notice requirements, including a statement of the number of persons to whom the Summary Notice was emailed, texted, and mailed. | 63 days following the Preliminary Approval Order |
| Objection Deadline: Any objectors shall file objections, together with all supporting memoranda and other material, with the Court, and serve that filing on Class Counsel and counsel for Whirlpool. This includes objections to: certification of the Settlement Class, the designation of Plaintiffs as Class Representatives, the appointment of Class Counsel, the Settlement, the Agreement, and Class Counsel's Fee Petition. | 91 days following the Preliminary Approval Order |
| Opt-Out Deadline: Requests by Class Members to be excluded from the Settlement must be either postmarked by the U.S. Postal Service (in the case of mailed exclusions) or actually received by the Settlement Administrator (in the case of electronically submitted exclusions). | 91 days following the Preliminary Approval Order |
| Any Person or attorney seeking to appear at the Fairness Hearing must file with the Court and serve on Class Counsel and counsel for Defendant an entry of appearance in the consolidated Lawsuit and notice of intention to appear at the Fairness Hearing. This includes any person objecting to any or all of the certification of the Settlement Class, designation of Plaintiffs as Class Representatives, appointment of Class Counsel, the Settlement, the Agreement, or Class Counsel's Fee Application. | 91 days following the Preliminary Approval Order |
| Settlement Administrator must file a list of all exclusions with the Court. | 105 days following the Preliminary Approval Order |

| | |
|---|---|
| Class Counsel shall file their reply, if any, in support of their Fee Application. | 105 days following the Preliminary Approval Order |
| Class Counsel shall file the proposed Final Approval Order and memorandum in support of Final Approval. Whirlpool may separately file a memorandum in support of Final Approval by this deadline. | 105 days following the Preliminary Approval Order |
| The Parties shall file their responses, if any, to any objections to certification of the Settlement Class, the designation of Plaintiffs as Class Representatives, the appointment of Class Counsel, the Settlement, the Agreement, and Class Counsel's Fee Petition. | 105 days following the Preliminary Approval Order |
| Class Counsel shall file their reply, if any, in support of Final Approval | 126 days following the Preliminary Approval Order |
| The Court, at its convenience, will hold the Fairness Hearing. | 140 days following the Preliminary Approval Order |
| Claims Deadline: All claims by Settlement Class Members to the Settlement Administrator for benefits shall be postmarked by the U.S. Postal Service (in the case of mailed Claim Forms) or received (in the case of electronic Claim Forms). | 180 days following the Preliminary Approval Order |