EXHIBIT 1

## AMENDED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Agreement") is made and entered into as of this 29th day of October, 2024, by Nancy Paperno and Robert Gibbany ("Plaintiffs"), on behalf of themselves and the Settlement Class, as defined below, and Defendant Whirlpool Corporation ("Whirlpool"), to settle, fully and finally, all of the claims that have been or could have been brought in the putative class-action Lawsuit (defined in Section I.A. herein) against Whirlpool relating to certain refrigerators described below. Pursuant to the request for supplemental information made by the Court in connection with the Lawsuit being settled, and the Parties' amendments in response, this Agreement supersedes and replaces the Parties' prior Class Action Settlement Agreement and Release.

1.    A dispute has arisen between the Parties concerning certain Whirlpool-manufactured refrigerators specifically defined in Section I(I);

2.    Plaintiffs filed a putative class-action Lawsuit alleging, among other things, that the Class Refrigerators are defective because the Class Refrigerators' dual-evaporator cooling system featured a defrost heating system and process insufficient to properly defrost the evaporator in the refrigeration compartment such that frost and ice periodically build up on the refrigeration compartment's evaporator ("Frost Clog Issue"), significantly impacting the Class Refrigerators' ability to cool food properly;

3.    Whirlpool categorically denies Plaintiffs' allegations, denies that it has committed or engaged in any misconduct, wrongdoing, or other actionable conduct, denies that the Class Refrigerators are defective, denies that Frost Clog regularly occurs during normal use, denies all liability, and asserts numerous defenses to Plaintiffs' allegations;

4.    The Parties to this Agreement, after engaging in extensive motion practice and confirmatory discovery—which included collecting and analyzing thousands of pages of

documents; conducting extensive interviews with Whirlpool witnesses, the named plaintiffs, and putative class members; producing highly-relevant, targeted, and sufficient documents and data by both Whirlpool and Plaintiffs; and consulting with various experts—and after conducting a formal mediation and engaging in substantial settlement negotiations over a period of several months, including the last three months with the help and oversight of a highly-experienced mediator, now wish to resolve all claims, disputes, and differences among them;

5.      Class Counsel has reviewed and analyzed the data and documents produced by Whirlpool and those obtained via their own investigation; consulted with experts; examined and considered the benefits to be provided to the Settlement Class Members under the Settlement provided for in this Agreement; considered the applicable laws of the state of California, and the claims that could be asserted under those laws regarding the Class Refrigerators; considered the risks, costs, and time associated with prosecuting this case through trial and appeals; and believe the Agreement to be in the best interest of the Settlement Class Members, taking into account the risks and costs of continued litigation, and the length of time that would be required to complete the litigation and any appeals;

6.      Whirlpool has at all times disputed, and continues to dispute, Plaintiffs' allegations in the Lawsuit and denied any liability for any of the claims that have or could have been raised regarding the Class Refrigerators by Plaintiffs or Settlement Class Members, but believes that the comprehensive resolution of the issues in the Lawsuit as provided in this Agreement will avoid the substantial costs and disruptions of continued litigation, is in the best interest of the Settlement Class, and is in the best interests of Whirlpool, its employees, and its trade partners, and is the most effective and least costly resolution of the Lawsuit;

7.      The Parties understand, acknowledge, and agree that this Agreement constitutes the compromise of disputed claims and that it is their mutual desire and intention that the Lawsuit be

settled and dismissed, on the merits and with prejudice, and that the Released Claims be finally and fully settled and dismissed, subject to and according to the below terms and conditions.

NOW, THEREFORE, the Parties agree and covenant as follows:

## I.    DEFINITIONS

As used in this Agreement, the following definitions shall apply:

A.    "Action" or "Lawsuit" means the putative class-action lawsuit *Paperno v. Whirlpool Corp.,* Case No. 3:23-cv-05114-RFL (N.D. Cal.).

B.    "Actual Cost of Repair" is the documented out-of-pocket cost paid by a Settlement Class Member for a Paid Qualifying Repair, based on documentation that satisfies Section IV(A)(1)-(2) of this Agreement.

C.    "Administration and Notice Expenses" means reasonable fees and expenses incurred for (1) preparing, mailing, and emailing the Summary Notice and FAQ; (2) the costs of Publication Notice; (3) receiving and adjudicating claims submitted by Settlement Class Members for compensation under this Settlement, including the costs of administering a Settlement Website for the review of the Settlement Notice and submission of claims; (4) receiving and processing Objections to the Settlement and Opt-Out Forms submitted by Settlement Class Members who wish to exclude themselves from the Class; (5) preparing status reports to the Parties and the Court; (6) preparing tax returns for any Settlement bank accounts; (7) distributing Settlement payments or other benefits to Settlement Class Members who timely submit Valid Claims; and (8) other costs of notice and administration of the Settlement that may be mutually-agreed upon by Whirlpool and Class Counsel, including administration of claims made for Future Frost Clog Issues defined herein.

D.  "Agreement" or "Settlement Agreement" means this Class Action Settlement Agreement and Release and the exhibits attached hereto.

E.  "Attorney Fees and Expenses" means the amount of any attorney fees and reimbursement of litigation expenses awarded to Class Counsel pursuant to their Fee Petitions.

F.  "Claims Deadline" means 180 days after the Notice Date.

G.  "Claim Form" means the two forms attached as Exhibit 1—one for "Repair" relief and one for "Replacement" relief—to be approved by the Court and to be submitted to the Settlement Administrator by Settlement Class Members who wish to make a claim.

H.  "Class Counsel" means Alison E. Chase, Laura R. Gerber, Michael Woerner, and Andrew N. Lindsay of Keller Rohrback L.L.P.; Michael J. Brickman, James C. Bradley, Nina Fields Britt, and Caleb M. Hodge of Rogers, Patrick, Westbrook & Brickman, LLC; and Kenneth Behrman, Attorney at Law.

I.  "Class Refrigerators" or "Refrigerators" means Whirlpool-manufactured Maytag, Jenn-Air, KitchenAid, or Whirlpool-branded 3-Door bottom mount French door refrigerators with a dual evaporator cooling system, and bearing the model numbers KFIS29BB**, KFIS29PBM**, KFIV29PCM**, KRFF507E**, KRFF707E**, MFT2776DEE**, MFT2776FEZ**, MFT2778EE**, MFT2976AE**, WRF757SDE**, WRF767SDEM**, WRF989SDA**, and WRF990SLA** and within the serial number range K212*** to K911***, as described on the list attached as Exhibit 2.

J.  "Class Representatives" or "Plaintiffs" means Nancy Paperno and Robert Gibbany.

4

K.    "Court" means the United States District Court for the Northern District of California.

L.    "Customer Information Databases" means Whirlpool's Siebel, eCRM, Sensus, and Service Bench databases, which contain production registration data (i.e., owner-warranty registrations and consumer contact records), and no others.

M.    "Defendant" means Whirlpool Corporation.

N.    "Effective Date" means the first date that is three business days after all of the following have occurred: (i) the Court has entered an order granting final approval of the Settlement Agreement in accordance with the terms of this Agreement; (ii) the time for any challenge to the Settlement, both in the Court and on appeal, has elapsed; and (iii) the Settlement has become final, either because no timely challenge was made to it or because any timely challenge has been finally adjudicated and rejected. For purposes of this Section, an "appeal" shall not include any appeal that concerns solely the issue of Class Counsel's Attorney Fees and Expenses or the Service Awards to the Class Representatives.

O.    "Fairness Hearing" means the final hearing, to be held after notice has been provided to the Settlement Class in accordance with this Agreement to: (1) determine whether to grant final approval, and (a) re-affirm certification of the Settlement Class, (b) designate Class Representatives, (c) designate Class Counsel as counsel for the Settlement Class, and the Settlement; (2) consider whether to enter the Final Approval Order; and (3) to rule on Class Counsel's Fee Petitions and Class Representative Service Awards.

P.        "FAQ" means the long-form notice to the Settlement Class in the form of Frequently Asked Questions and Answers attached as Exhibit 3, to be approved by the Court and posted on the Settlement Website in accordance with this Agreement.

Q.        "Fee Petition" means the application to be filed by Class Counsel by which they will seek an award of attorney fees and reimbursement of litigation expenses incurred by them in prosecuting and settling the Lawsuit, as well as a Service Award to be paid to Plaintiffs.

R.        "Final Approval Order" means the proposed Order Granting Final Approval to the Settlement, to be entered by the Court with terms to be agreed upon by the Parties and consistent with this Agreement.

S.        "Frost Clog Issue" means a failure of the defrost heating system in a Class Refrigerator's dual evaporator cooling system that causes a buildup of frost and ice in the refrigeration compartment on or around the evaporator, which, in turn, interferes with the refrigerators' ability to cool food properly, which could be caused one or more of the various components and assemblies detailed in the Technical Service Pointer attached as Exhibit 4.

T.        "Post-Notice Frost Clog Issue" is a Frost Clog Issue that occurs on or after the Notice Date.

U.        "Notice Date" means the date on which the Settlement Administrator completes the initial mailing and emailing of Summary Notices to Settlement Class Members, as well as publication notice.

V.        "Notice of Claim Deficiency" means the form that the Settlement Administrator will prepare and send, by first-class United States Mail, or email if available, to each Person who has submitted a Claim Form that the Settlement Administrator has

determined, subject to review and approval by Class Counsel, to not be a Valid Claim.

W.      "Notice of Claim Denial" means the form that the Settlement Administrator will send, by first-class United States Mail, or email if available, to each Person who has submitted a Claim Form that the Settlement Administrator has determined, subject to review and approval by Class Counsel, to not be a Valid Claim.

X.      "Opt-Out" means the process by which a member of the Settlement Class may submit a request for exclusion in the manner and time prescribed by the Court in the Preliminary Approval Order.

Y.      "Paid Qualifying Repair" means where a Settlement Class Member paid some out-of-pocket cost for a repair of their Refrigerator that included the services, components, and assemblies described in Exhibit 4 in response to a Frost Clog Issue.

Z.      "Paid Qualifying Replacement" means where a Settlement Class Member paid some out-of-pocket cost to replace, rather than repair, their Refrigerator in response to a Frost Clog Issue that continued or recurred after two or more Paid Qualifying Repairs within the first six (6) years after manufacture, such prior repairs being documented as per Section IV(A)(1)-(2) of this Agreement.

AA.     "Parties" means Plaintiffs and Whirlpool, collectively.

BB.     "Past Frost Clog Issue" means a Frost Clog Issue that occurred prior to the Notice Date.

CC.     "Person" means any natural person.

DD.   "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval to Class Action Settlement, to be entered by the Court with terms to be agreed upon by the Parties and consistent with this Agreement.

EE.   "Publication Notice" means the proposed notice attached as Exhibit 5, with the terms and form to be approved by the Court and to be published in accordance with the notice plan set forth in Section V of this Agreement.

FF.   "Released Claims" means all claims released by Plaintiffs and all Settlement Class Members pursuant to the release and waiver set forth in Section IX of this Agreement.

GG.   "Releasees" means (i) Defendant, together with its predecessors and successors in interest, parents, subsidiaries, affiliates, and assigns; (ii) each of Defendant's past, present, and future officers, directors, agents, representatives, servants, employees, attorneys, and insurers; and (iii) all distributors, retailers, suppliers, and other entities who were or are in the chain of design, testing, manufacture, assembly, distribution, marketing, sale, installation, or servicing of the Class Refrigerators, all of whom will be parties to the releases set forth in Sections IX and X.

HH.   "Service Award" means a reasonable payment, subject to Court approval, made to a Plaintiff as compensation for his or her efforts in pursuing these Actions.

II.   "Settlement" means the settlement provided for in this Agreement.

JJ.   "Settlement Administrator" means Angeion Group.

KK.   "Settlement Class" means all persons who purchased (other than from resale) or otherwise obtained in accordance with Section IV.A.1 below, a Class Refrigerator for personal or household use within the United States and its territories from Defendant or its authorized resellers. Excluded from the Settlement Class are

(i) officers, directors, and employees of Whirlpool or its parents, subsidiaries, or affiliates, (ii) attorneys appearing in this case and their household members, (iii) insurers of Settlement Class Members, (iv) subrogees or all entities claiming to be subrogated to the rights of a Class Refrigerator purchaser, a Class Refrigerator owner, or a Settlement Class Member, (v) issuers or providers of extended warranties or service contracts for Class Refrigerators, and (vi) persons who timely and validly exercise their right to be removed from the Settlement Class, as described below.

LL.    "Settlement Class Member" or "Claimant" means all Persons who are members of the Settlement Class who do not Opt-Out.

MM.    "Settlement Website" means a website created by the Settlement Administrator to facilitate notice and claims administration, as detailed in Section V(J) of this Agreement.

NN.    "Summary Notice" means the proposed postcard and email notice attached as Exhibit 6, to be approved by the Court and to be distributed by the Settlement Administrator in accordance with the notice plan set forth in Section V of this Agreement.

OO.    "Technical Service Pointer" means the proposed notice to Whirlpool's authorized service network attached as Exhibit 4, to be approved by the Court and to be distributed with materially similar content by Whirlpool through its Service Matters portal to its authorized service network.

PP.    "Valid Claim" means a Claim Form that (i) is timely submitted by a Settlement Class Member in accordance with the requirements of this Agreement and the Preliminary Approval Order, (ii) is signed with a certification that the information

is true and correct to the best of the claimant's knowledge and recollection, and (iii) contains all of the attestations, certifications, information, and documentation required for that Settlement Class Member to be eligible to receive one or more of the benefits provided in Section IV of this Agreement.

QQ.    "Whirlpool" means Whirlpool Corporation and its consolidated subsidiaries, including their successors, predecessors, assigns, affiliates, subsidiaries, shareholders, officers, directors, agents, insurers, attorneys, and employees.

## II.    CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

For purposes of implementing this Agreement, and for no other purpose, Whirlpool stipulates to the conditional certification of the Settlement Class. If, for any reason, this Agreement should fail to become effective, Whirlpool's stipulation to certifying the Settlement Class shall be null and void, and the Parties shall return to their prior positions in the Lawsuit.

## III.    REQUIRED EVENTS

A.    As soon as practicable after executing this Agreement, Plaintiffs shall take all necessary steps to file with the Court a motion seeking entry of the Preliminary Approval Order, which by its terms shall accomplish all of the following:

1.    Preliminarily approve the Settlement and this Agreement as fair and reasonable to the Settlement Class;

2.    Conditionally certify the Settlement Class as a class for purposes of effectuating the Settlement;

3.    Designate Plaintiffs as the Class Representatives;

4.    Designate Class Counsel as counsel for the Settlement Class;

5.    Designate Angeion Group as the Settlement Administrator and instruct the Settlement Administrator to perform the following functions in accordance with the terms of this Agreement and the Preliminary Approval Order:

    a.    Disseminate the Summary Notice by email if available or first-class United States Mail if email is not available, as well as publish on social media;

    b.    Establish the Settlement Website with the Settlement Agreement, FAQ, and other information that Whirlpool and Class Counsel jointly agree to post concerning the nature of the case and the status of the Settlement, including relevant pleadings such as the operative Complaint, papers in support of preliminary and final approval of the Settlement, and Class Counsel's Fee Petition, plus relevant orders of the Court;

    c.    Prior to distributing the Summary Notice or publishing Publication Notice, establish a toll-free telephone number that Settlement Class Members can call to request hard copies of the Claim Forms and FAQ be sent to them by mail and obtain additional information regarding the Settlement;

    d.    Receive, evaluate, and either approve completed Claim Forms sent by Persons seeking to receive compensation as meeting the requirements of the Agreement or disapprove as failing to meet those requirements, including claims for Frost Clog Issues and claims for Post-Notice Frost Clog Issues;

e.      Subject to the provisions of Section V(D) of this Agreement, 35 days before mailing Notices of Claim Denial, provide to Whirlpool and Class Counsel (i) a list of the names and addresses of all Settlement Class Members who have submitted Claim Forms and whose Claim Forms the Settlement Administrator has determined to be Valid Claims; and (ii) a separate list of the names and addresses of all Persons who have submitted Claim Forms and whose Claim Forms the Settlement Administrator has determined not to be Valid Claims, by category of benefit. For any Settlement Class Members that will be sent Notices of Claim Denial, the Administrator shall also provide the reason for the claim denial. Whirlpool and Class Counsel shall then have an opportunity to review the Valid Claims and the Notices of Claim Denial and request a meet and confer should they decide to challenge any Valid Claims or Notices of Claim Denial. In the event Class Counsel challenges a Notice of Claim Denial, that Notice shall not be sent to the Class Member until Class Counsel and counsel for Defendant meet and confer to arrive at a resolution, which must occur within at least 28 days of the Settlement Administrator's provision of the lists described above to Class Counsel and counsel for Defendant. Legitimate grounds for Whirlpool and Class Counsel to challenge a claim shall include, but are not limited to, inadequate documentation and inconsistency with Whirlpool's records, all of which is subject to Section V(D) below

discussing the Class Member's opportunity to cure a deficiency with their claim;

f.     Effect Publication Notice through appropriate media for the Settlement Class;

g.     Send, by email if available or first-class United States Mail if email is not available, to each Person who has submitted a Claim Form that the Settlement Administrator has determined not to be a Valid Claim, and which has not been challenged by Class Counsel, a Notice of Claim Denial or a Notice of Claim Deficiency;

h.     Process requests for exclusion from the Settlement in accordance with this Agreement;

i.     Process objections to the Settlement in accordance with this Agreement; and

j.     Within 35 days after the payment of all Valid Claims for monetary compensation by the Settlement Administrator, provide to Whirlpool and Class Counsel, under penalty of perjury, a statement of the total number of claims submitted (in total and by category of benefit), the total number of claims adjudicated as Valid Claims (in total and by category of benefit), and the total dollar amount paid to Settlement Class Members (in total and by category of benefit).; and

k.     Refer Post-Notice Frost Clog Issue claims to Whirlpool to administer following the procedures set forth in Section IV.B. below.

6. Approve the form, contents, and methods of notice to be given to the Settlement Class and direct the Settlement Administrator to provide and cause to be provided such notices and to file with the Court a declaration detailing the scope, methods, and results of the notice program;

7. Establish procedures and schedule deadlines for Settlement Class Members to object to the Settlement or certification of the Settlement Class, to exclude themselves from the Settlement, and to submit Claim Forms to the Settlement Administrator, all consistent with the terms of this Agreement;

8. Schedule the Fairness Hearing; and

9. Schedule deadlines for the filing of (a) papers in support of final approval of the certification of the Settlement Class, the designation of Plaintiffs as representatives of the Settlement Class, the appointment of Class Counsel as counsel for the Settlement Class, and the Settlement; (b) Class Counsel's Fee Petition; and (c) objections to certification of the Settlement Class, to the designation of Plaintiffs as the representatives of the Settlement Class, to the appointment of Class Counsel as counsel for the Settlement Class, or to the Settlement.

B. At the Fairness Hearing, Whirlpool and Class Counsel will jointly request the Court to enter a Final Approval Order that (1) certifies the Settlement Class, designates Plaintiffs as Class Representatives, and designates Class Counsel as counsel for the Settlement Class; (2) grants final approval of the Settlement and this Agreement as fair, reasonable, and adequate to the Settlement Class Members; (3) finds that the Class Notice complied with all laws, including, but not limited to Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution;

(4) provides for the release of all Released Claims; (5) orders the dismissal with prejudice of all claims, causes of action, and counts alleged in the Lawsuit, and incorporates the releases and covenant not to sue stated in this Agreement, with each of the Parties to bear its, his, or her own costs and attorney fees, except as provided in Section VIII, below; (6) authorizes the payment by Whirlpool of Valid Claims approved by the Settlement Administrator as Valid Claims, and otherwise reviewed by Class Counsel and Counsel for Whirlpool and determined to be Valid Claims, in accordance with the terms of the Agreement; and (7) preserves the Court's continuing jurisdiction over the administration of the Settlement and enforcement of this Agreement. In addition, Class Counsel will move the Court for entry of a separate order approving the following: (1) Service Awards to Plaintiffs as described in this Agreement and (2) attorney fees and costs to Class Counsel in an amount approved by the Court and consistent with the terms of this Agreement.

C.      Whirlpool, Plaintiffs, and Class Counsel will cooperate and take all reasonable actions to accomplish the above. If the Court fails to enter either the Preliminary Approval Order or the Final Approval Order, Whirlpool, Plaintiffs, and Class Counsel will use all reasonable efforts that are consistent with this Agreement to cure any defect identified by the Court. If, despite such efforts, the Court does not enter the Preliminary Approval Order and Final Approval Order, the Parties will return to their positions in the Lawsuit as they were immediately before the execution of the Settlement Agreement.

## IV.    SETTLEMENT BENEFITS

For any Settlement Class Member who can provide sufficient documentary proof of the out-of-pocket expenses detailed in this section, Whirlpool will reimburse those out-of-pocket expenses subject to the limitations set forth below.

A.    <u>Compensation to Settlement Class Members for ~~Past~~ Frost Clog Issues</u>. Settlement Class Members who have experienced a ~~Past~~ Frost Clog Issue within eight years after manufacture of their Refrigerator, or who replaced their Class Refrigerator within six years after manufacture after experiencing two or more ~~Past~~ Frost Clog Issues, and who otherwise meet the eligibility requirements below, will be entitled to reimbursement of certain documented out-of-pocket expenses. To be eligible for compensation for a ~~Past~~ Frost Clog Issue, a Settlement Class Member must submit to the Settlement Administrator ~~within 180 days of the Notice Date~~:

1.    A properly completed claim form showing a valid Class Refrigerator model and serial-number combination, together with documentary proof showing that the Settlement Class Member either purchased a Refrigerator new, or acquired a Refrigerator as part of the purchase or remodel of a home, or received as a gift, from a donor meeting those requirements, a new Refrigerator not used by the donor or by anyone else after the donor purchased the Refrigerator and before the donor gave the Refrigerator to the Settlement Class Member. Sufficient documentary proof includes, but is not limited to, purchase receipts, credit card statements, and warranty registrations. If no such documentary proof is available, then the claimant shall provide a claim-form declaration, signed under oath, that the claimant cannot locate sufficient documentary proof, and that the claimant meets the

Settlement Class definition in Section I(JJ), above. If the Settlement Class Member does not provide a valid model and serial number, the Settlement Class Member will not be entitled to compensation. Additionally, if the Settlement Class Member does not provide documentary proof, or does not provide a claim-form declaration, signed under oath, proving that the Settlement Class Member is a member of the Settlement Class, the Settlement Class Member will not be entitled to compensation.

2.     The following are forms of sufficient documentary proof that (a) the Settlement Class Member's Refrigerator experienced a Frost Clog Issue, and either (b) the Settlement Class Member actually made a Paid Qualifying Repair, or (c) the Settlement Class Member made a Paid Qualifying Replacement, rather than repair, of their Refrigerator in response to a Frost Clog Issue:

a.     The submission of a valid model and serial number is sufficient documentary proof of the date of manufacture.

b.     For purposes of claims to receive reimbursements for Paid Qualifying Repairs, sufficient documentary proof that the claimant experienced a Frost Clog Issue includes, but is not limited to, service tickets, service estimates, and/or service receipts. If no such documentary proof is available, then the claimant shall provide a claim-form declaration, signed under oath, that the claimant experienced, within eight years after manufacture, a Frost Clog Issue. If the Settlement Class Member does not provide

documentary proof or a declaration, the Settlement Class Member will not be entitled to compensation.

c.    For purposes of claims to receive reimbursements for Paid Qualifying Repairs, sufficient documentary proof that the claimant experienced a Paid Qualifying Repair includes, but is not limited to, service tickets, service receipts, cancelled checks, and/or credit card statements. If the documentary proof is insufficient to demonstrate that (1) a Qualifying Repair occurred and (2) the Settlement Class Member paid some amount out of pocket for the Qualifying Repair, the Settlement Class Member will not be entitled to compensation.

d.    Claims for Paid Qualifying Repairs for ~~Past~~ Frost-Clog Issues must be made within 180 days of the Notice Date. Claims for Paid Qualifying Repairs occurring after the Notice Date must be made ~~by scheduling service with Whirlpool~~ within 90 days of the Post-Notice Frost Clog Issue occurring.

e.    For purposes of claims to receive reimbursements for Paid Qualifying Replacements, sufficient documentary proof that the claimant actually experienced Frost Clog Issues requiring two or more repairs before the Qualifying Replacement includes, but is not limited to, the same documentary proof required of a Paid Qualifying Repair in section IV.A.2.c. If the Settlement Class Member does not provide sufficient documentary proof, the Settlement Class Member will not be entitled to compensation.

f.    For purposes of claims to receive reimbursements for Paid Qualifying Replacements, sufficient documentary proof that the claimant experienced a Paid Qualifying Replacement includes, but is not limited to, purchase receipts, credit card statements, and/or other documents showing the amount paid out of pocket. ~~Claims for Paid Qualifying Replacements occurring after the Notice Date must be submitted within 90 days of the date the replacement is purchased.~~ If the documentary proof is insufficient to demonstrate that a Qualifying Replacement occurred or the amount paid out-of-pocket, the Settlement Class Member will not be entitled to compensation.

g~~f~~.    Claims for Paid Qualifying Replacements occurring prior to the Notice Date must be submitted within 180 days of the Notice Date. Claims for Paid Qualifying Replacements occurring after the Notice Date must be submitted within 90 days of the date the replacement is purchased.

h.    ~~Whirlpool~~ The Settlement Administrator shall continue to administer ~~repairs~~ claims for Post-Notice Frost Clog Issues on a rolling basis through the last qualifying date of ~~n~~ March 11, 2027.

i.    Any Settlement Class Member who believes their purchase date is later than the date of manufacture decoded from their serial number may provide sufficient documentary proof showing their date of purchase. Sufficient documentary proof of the date of purchase includes, but is not limited to, purchase receipts, shipping or

delivery invoices or confirmations, cancelled checks and/or credit card statements. Settlement Class Members who provide sufficient documentary proof shall have their settlement benefit eligibility calculated according to their documented purchase or delivery date, whichever is later.

3.    Settlement Class Members who meet and satisfy the threshold requirements of Section IV(A)(1)-(2) above will be entitled to reimbursement of certain out-of-pocket expenses constituting a Paid Qualifying Repair or Paid Qualifying Replacement, as follows:

a.    For purposes of claims to receive reimbursements for Paid Qualifying Repairs, the claimant will be entitled to a cash payment equivalent to all or part of the Actual Cost of Repair, as follows:

i.    for each Paid Qualifying Repair in years one (1), two (2), or three (3) after manufacture, the Actual Cost of Repair up to a maximum of $300 per Paid Qualifying Repair;

ii.    for each Paid Qualifying Repair in years four (4), five (5), or six (6) after manufacture, the Actual Cost of Repair up to a maximum of $225 per Paid Qualifying Repair;

iii.    for each Paid Qualifying Repair in years seven (7) or eight (8) after manufacture, the Actual Cost of Repair up to a maximum of $150 per Paid Qualifying Repair.

b.    For purposes of claims for Paid Qualifying Replacements, the claimant will be entitled to a cash payment equivalent to a

percentage of the original purchase price of the Refrigerator, as follows:

i.      for Paid Qualifying Replacements in years one (1), two (2), or three (3) after manufacture, 75% of the original purchase price of the Refrigerator if Whirlpool's records show the Settlement Class Member actually contacted Whirlpool to request replacement before paying out-of-pocket for same; 50% of the original purchase price of the Refrigerator otherwise;

ii.     for Paid Qualifying Replacements in years four (4), five (5) or six (6) after manufacture, 45% of the original purchase price of the Refrigerator if Whirlpool's records show the Settlement Class Member actually contacted Whirlpool to request replacement before paying out-of-pocket for same; 25% of the original purchase price of the Refrigerator otherwise.

B.      Compensation to Settlement Class Members for Post-Notice Frost Clog Issues. Settlement Class Members who experience a documented Frost Clog Issue after the Notice Date but within eight years after manufacture of their Refrigerator will be entitled to a credit toward repair of the Post-Notice Frost Clog Issue. To be eligible for a credit toward the repair of a Post-Notice Frost Clog Issue, a Settlement Class Member must contact Whirlpool to schedule repair of the Post-Notice Frost Clog Issue and must provide to Whirlpool:

1.    A valid Class Refrigerator model and serial-number combination. If the Settlement Class Member does not provide a valid model and serial number, the Settlement Class Member will not be entitled to compensation.

2.    Proof that after the Notice Date but within eight years of purchase the Settlement Class Member's Refrigerator experienced a Frost Clog Issue includes, but is not limited to, service notes, service tickets, service estimates, and service receipts submitted to Whirlpool by the Settlement Class Member and/or the service technician Whirlpool schedules to repair the Post-Notice Frost Clog Issue. If Whirlpool does not receive such documentary proof, the Settlement Class Member will not be entitled to compensation.

3.    Settlement Class Members who meet and satisfy the threshold requirements of Section IV(B)(1)-(2) above will be entitled to a credit toward repair of the Post-Notice Frost Clog Issue on the same scale and terms set forth in Section IV(A)(3)(a).

4.    Whirlpool shall continue to administer repairs for Post-Notice Frost Clog Issues on a rolling basis through the last qualifying date on March 11, 2027.

5.    Whirlpool shall maintain data reasonably necessary to report on (a) the number of Post-Notice Frost Clog Issue claims made, approved, and denied; (b) the reasons for any denied claims; and (c) the values of all approved claims. Whirlpool shall provide the Settlement Administrator reports of this data every 35 days for the first calendar year following the Notice Date, and then on a quarterly basis through the quarter ending March 31, 2027.

B.    If any Settlement Class Member previously has received from Whirlpool any form of compensation for a Frost Clog Issue with the claimant's Refrigerator (*e.g.*, a policy-adjust cash payment, a partial refund, a discount off the regular price of a new refrigerator, a coupon applicable to the purchase of a new refrigerator that was redeemed), any compensation to which the claimant would otherwise be entitled shall be reduced as follows: (i) for any policy-adjust cash payment, cash refund, or other cash payment, the amount of that payment; (ii) for any specified dollar-discount off the price of any new refrigerator, the specified dollar amount; (iii) for any specified percentage-discount off the price of any new refrigerator, the dollar amount determined by applying that percentage to the regular, then-prevailing price of that product; and (iv) for any coupon redeemed for the purchase of a new refrigerator, the dollar amount specified on the face of the coupon redeemed. Whirlpool shall query its eCRM and Service Bench databases to determine for each Valid Claim whether it provided such forms of compensation and shall provide the Settlement Administrator a report detailing the results of that query so that the Settlement Administrator (for Frost Clog Issues) and Whirlpool (for Post-Notice Frost Clog Issues) may adjust each claimant's compensation accordingly.

C.

D.C.    No claimant who received from Whirlpool either a full refund of the purchase price they paid for the Refrigerator or a free exchange of the Refrigerator for a new refrigerator of any model will be entitled to any payment or other compensation under the terms of this Agreement, unless the claimant paid for a Qualifying Repair of either the original or new Refrigerator.

23

~~Settlement Class Members will have up to 180 days after the Notice Date to submit a claim form for a settlement payment for a Frost Clog Issue that occurred prior to the Notice Date~~.

## V.    SETTLEMENT ADMINISTRATION AND NOTICE EXPENSES

A.    While all notice, publication and claims administration activities shall be carried out by the Settlement Administrator, including the evaluation of documentary proof submitted by Settlement Class Members, Class Counsel may maintain a website or social media presence that contains information substantially similar to the Summary Notice, that also directs Settlement Class Members to the Settlement Administrator's website.

B.    Whirlpool agrees to pay for reasonable Administration and Notice Expenses and shall enter into a separate agreement with the Settlement Administrator to pay those expenses. Whirlpool shall not be responsible for any additional administration expenses that may be incurred by Plaintiffs or Class Counsel in: (a) responding to inquiries about the Agreement, the Settlement, or the Lawsuit; (b) defending the Agreement or the Settlement against any challenge to it; or (c) defending against any challenge to any order or judgment entered pursuant to the Agreement, unless otherwise specifically agreed.

C.    The Settlement Administrator shall process all claims made by Settlement Class Members ~~who experienced a Frost Clog Issue before the Notice Date~~, including the evaluation of the documentary proof submitted by such Settlement Class Members to substantiate a Qualifying Repair or Qualifying Replacement subject to relief as set forth in this Agreement. ~~Whirlpool shall process all claims made by Settlement Class Members who experience a Post-Notice Frost Clog Issue, including the~~

~~evaluation of the documentary proof submitted by such Settlement Class Members to substantiate a Qualifying Repair.~~

D.      Before denying any claim on the basis of insufficient documentary proof, the Settlement Administrator shall send, by email if available or first-class United States Mail if email is not available, a written Notice of Claim Deficiency to the Settlement Class Member identifying the insufficient proof that may cause the claim to be denied and giving the Settlement Class Member no more than 30 days to cure the deficiency. Insufficient documentary proof shall be the only claim deficiency for which an opportunity to cure will be provided. Examples of insufficient documentary proof include illegible or incomplete documents. The complete absence of required documentary proof, however, is not a deficiency for which an opportunity to cure will be provided.

E.      If any Settlement Class Member disputes the Settlement Administrator's denial of a claim for any reason, the Settlement Administrator shall send the claim to Whirlpool and Class Counsel for Whirlpool to determine the claim's validity. Whirlpool's determination shall be final and binding unless Class Counsel, within 30 days of notification of Whirlpool's determination, contests Whirlpool's determination by first attempting to resolve the claim in dispute directly with Whirlpool's counsel and, if those efforts are unsuccessful, by presenting the matter for determination by the Court within 30 days of the completion of Whirlpool's and Class Counsel's conferral. ~~In the case of Whirlpool's denial of a claim for a Post-Notice Frost Clog Issue for any reason, Class Counsel shall have the right to challenge the denial according to the same procedures above.~~

F.    The Parties agree that Angeion Group will serve as the Settlement Administrator, subject to the Court's approval.

G.    With the exception of decisions regarding claims adjudication, for which the respective rights and responsibilities of Whirlpool, Class Counsel, the Settlement Administrator, and the Court are addressed elsewhere in this Agreement, all decisions regarding notice and settlement administration shall be made jointly between Whirlpool and Class Counsel. Class Counsel and counsel for Whirlpool shall have the ability to communicate with the Settlement Administrator without the need to include each other in each of those communications. Disputes, if any, shall be resolved by the Court.

H.    The Settlement Administrator will provide the Summary Notice by email to all members of the Settlement Class for whom valid email addresses are known to Whirlpool. Subject to approval by the Settlement Administrator, for all Settlement Class Members for whom Whirlpool only has a physical mailing address, or whose email notice bounced back from an undeliverable address, the Settlement Administrator will utilize a reverse look-up service to obtain additional email addresses, and email the Summary Notice to all members of the Settlement Class for whom an email can be identified through the reverse look-up service. The Settlement Administrator will mail a Summary Notice to each member of the Settlement Class for whom an address can be found in Whirlpool's databases but who do not have an identifiable email address. The Settlement Administrator will perform a national change of address search and forward notice packages that are returned by the U.S. Postal Service with a forwarding address.

I.    The Settlement Administrator also will provide publication notice to the Settlement Class using appropriate media outlets, including social media outlets, and media outlets and notices shall be approved by Whirlpool and Class Counsel before the notices are published.

J.    The Settlement Administrator will create a Settlement Website that will include all necessary and pertinent information for Settlement Class Members, including the Claim Form, the FAQ, and information relating to relevant deadlines. The Settlement Website will also permit Settlement Class Members to submit claims online, including uploading any necessary documentation. The Settlement Website will also include information that Whirlpool and Class Counsel jointly agree to post concerning the nature of the case and the status of the Settlement, including relevant pleadings, such as the operative Complaint, papers in support of preliminary and final approval of the Settlement, Class Counsel's Fee Petition, plus relevant orders of the Court.

K.    To effectuate the administration of claims for Post-Notice Frost Clog Issues, no later than the Notice Date, Whirlpool shall publish to its network of third-party authorized service technicians the Technical Service Pointer. The Technical Service Pointer shall communicate to servicers the relief available to Class Members and to direct Class Members to the Settlement Administrator for instructions on how to submit a claim for reimbursement of a Paid Qualifying Repair for a Post-Notice Frost Clog Issue.

K.L.    The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal

business practices, and consistent with the Northern District of California's Procedural Guidance for Class Action Settlements requirements concerning procedures for securely handling class member data. Such records will be made available to Whirlpool and Class Counsel upon request. The Settlement Administrator will provide to Class Counsel and Whirlpool information concerning notice and administration and implementation of the Settlement Agreement, including weekly reports concerning the number of opt-outs and objections received; periodic status reports regarding claims; and any correspondence received by the Settlement Administrator at any time, upon reasonable notice. The Settlement Administrator shall provide Class Counsel with an affidavit or declaration by a competent affiant or declarant, attesting that Class Notice has been disseminated in accordance with the Preliminary Approval Order and provide information requested by Class Counsel.

L.M.    The Parties agree that the Summary Notice, FAQ, Publication Notice, Claim Form, and Settlement Website provide information sufficient to inform Settlement Class Members of the essential terms of this Agreement, appropriate means for obtaining additional information regarding the Agreement and the Lawsuit, appropriate information about the procedure for challenging or excluding themselves from the Settlement, if they should wish to do so, and appropriate means for and information about submitting a claim for compensation pursuant to the Settlement. The Parties also agree that the dissemination of notice of the Settlement in the manner specified in this Agreement and on the Settlement Website satisfies the notice requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, subject to Court approval.

28

M.N.   The Parties will jointly request the Court to approve, in the Preliminary Approval
Order, the method of notice described in this Agreement.

N.O.   As soon as practicable, but no later than 10 days after the Parties file this Agreement
with the Court, Whirlpool shall comply with the notice provisions of the Class
Action Fairness Act, 28 U.S.C. § 1715.

## VI.    PROCEDURES FOR SETTLEMENT APPROVAL

A.    The Parties shall use their best efforts to effectuate this Agreement, including
cooperating in drafting the preliminary approval documents and securing the
prompt, complete, and final dismissal, with prejudice, of the Lawsuit.

B.    Preliminary Approval

1.    As soon as practicable, the Parties shall jointly move the Court for
preliminary approval of the Settlement; for authorization to publish the
Publication Notice and to disseminate the Summary Notice contemplated
by this Agreement to all members of the Settlement Class; and for a stay of
all proceedings in the consolidated Lawsuit, except in connection with this
Agreement as set forth herein (the "Motion"). The Motion shall include the
proposed Preliminary Approval Order, proposed forms of the Summary
Notice, Publication Notice, and Claim Form, and the methods and proposed
dates of their dissemination to the Settlement Class, and the proposed
schedule through final approval of the Agreement.

2.    The deadlines established in the proposed Preliminary Approval Order are
as follows:

a. 42 days after entry of the Preliminary Approval Order: The Settlement Administrator shall begin emailing and then mailing the Summary Notice.

b. 49 days after entry of the Preliminary Approval Order: The Settlement Administrator shall publish the Publication Notice.

c. 56 days after entry of the Preliminary Approval Order: Class Counsel shall file their Fee Petition, which shall also be posted on the Settlement Website.

d. 63 days after entry of the Preliminary Approval Order: The Settlement Administrator shall file with the Court a declaration of compliance with the notice requirements, including a statement of the number of persons to whom the Summary Notice was emailed and mailed.

e. 91 days after entry of the Preliminary Approval Order: Any objectors shall file objections, together with all supporting memoranda and other material, with the Court, and serve that filing on Class Counsel and counsel for Defendant. This includes objections to: certification of the Settlement Class, the designation of Plaintiffs as Class Representatives, the appointment of Class Counsel, the Settlement, the Agreement, and Class Counsel's Fee Petition. Objections must comply with Section VII of this Agreement to be valid.

f. 91 days after entry of the Preliminary Approval Order: Requests by Settlement Class Members to be excluded from the Settlement must

be either postmarked by the U.S. Postal Service (in the case of mailed exclusions) or actually received by the Settlement Administrator (in the case of electronically submitted exclusions). Exclusion requests must comply with Section VII of this Agreement to be valid.

g.    91 days after entry of the Preliminary Approval Order: Any Person or attorney seeking to appear at the Fairness Hearing must file with the Court and serve on Class Counsel and counsel for Defendant an entry of appearance in the consolidated Lawsuit and notice of intention to appear at the Fairness Hearing. This includes any person objecting to any or all of the certification of the Settlement Class, designation of Plaintiffs as Class Representatives, appointment of Class Counsel, the Settlement, the Agreement, or Class Counsel's Fee Application. This notice of intention to appear must substantially comply with Section VII of this Agreement to be valid.

h.    105 days after entry of the Preliminary Approval Order: The Settlement Administrator must file a list of all exclusions with the Court.

i.    105 days after entry of the Preliminary Approval Order: Class Counsel shall file their reply, if any, in support of their Fee Application.

j.    105 days after entry of the Preliminary Approval Order: Class Counsel shall file the proposed Final Approval Order and memorandum in support of Final Approval. Defendant may

separately file a memorandum in support of Final Approval by this deadline.

k.    105 days after entry of the Preliminary Approval Order: The Parties shall file their responses, if any, to any objections to certification of the Settlement Class, the designation of Plaintiffs as Class Representatives, the appointment of Class Counsel, the Settlement, the Agreement, and Class Counsel's Fee Petition.

l.    126 days after entry of the Preliminary Approval Order: Class Counsel shall file their reply, if any, in support of Final Approval.

m.    140 days after entry of the Preliminary Approval Order: The Court, at its convenience, will hold the Fairness Hearing.

n.    180 days after entry of the Preliminary Approval Order: Claims Deadline: All claims by Settlement Class Members to the Settlement Administrator for benefits, except as otherwise provided in Section IV(B) of this Agreement, shall be postmarked by the U.S. Postal Service (in the case of mailed Claim Forms) or received (in the case of electronic Claim Forms). Claims received after this date shall not be Valid Claims. The Claims Deadline is a material term of the Settlement, without which Defendant would not have entered into this Agreement.

m.    For the purpose of computing deadlines, the Parties incorporate Federal Rule of Civil Procedure 6(a)(1).

C.    Final Approval

1.    At the Fairness Hearing, the Parties will jointly request the Court to enter the Final Approval Order, which (i) grants final approval of the certification of the Settlement Class, designation of the Class Representatives, and designation of Class Counsel, all as conditionally approved in the Preliminary Approval Order; (ii) grants final approval to the Settlement and this Agreement as fair, reasonable, and adequate to the Settlement Class; (iii) provides for the release of all Released Claims; (iv) orders the dismissal with prejudice of all claims, causes of action, and counts alleged in the Lawsuit, and incorporates the releases and covenant not to sue stated in this Agreement; (v) authorizes the payment by Whirlpool of claims approved by the Settlement Administrator as Valid Claims in accordance with the terms of the Agreement; (vi) lists all dates relating to the administration of the settlement; and (vii) preserves the Court's continuing jurisdiction over the administration of the Settlement and enforcement of the Agreement.

2.    In addition, no later than 56 days after entry of the Preliminary Approval Order, Class Counsel will move the Court for entry of a separate order approving: (1) Service Awards as set forth herein; and (2) attorney fees and costs to Class Counsel consistent with this Agreement.

## VII.    REQUESTS FOR EXCLUSION & OBJECTIONS

A.    Any Class Member shall have the right to be excluded by providing a written request submitted online, or postmarked, no later than 91 days following the entry of the Preliminary Approval Order, which deadline shall be set forth in the Summary Notice, FAQ, and Publication Notice. These Notices shall provide instructions to Settlement Class Members who wish to exclude themselves from the

Settlement Class regarding the exclusion procedure that must be followed to be excluded from the Settlement Class. Each Class Member wishing to be excluded from the settlement shall request from the Settlement Administrator a Request for Exclusion where the Class Member shall include their name, email address, mailing address, and mobile phone number together with the model number and serial number of their Class Refrigerator. The Settlement Administrator will also make available an online Request for Exclusion. To be valid, Requests for Exclusion must include all of the information listed above, must be individually signed by each Class Member wishing to be excluded, and must be submitted to the Settlement Administrator individually. Mass or class opt outs shall not be allowed. The Settlement Administrator shall assign a unique identifier to each properly-submitted Request for Exclusion to individually track those individuals who shall be reported to the Court as having been excluded from the Settlement Class.

B.     Within 7 days after the Court-ordered Exclusion deadline, the Settlement Administrator shall provide to counsel for Defendant and Class Counsel a list of the names and addresses of the members of the Settlement Class who have requested to be excluded.

C.     If the number of Settlement Class Members who properly request exclusion totals 10,000 or more, Whirlpool, in its sole option, shall have the right to withdraw from the settlement and terminate this Agreement.

D.     The Notices also shall state that any Class Member who wishes to appear to oppose the reasonableness and fairness of the Settlement at the Fairness Hearing must file with the Court an objection in writing, stating the basis of the objection. Objections must also be served on Class Counsel and counsel for Whirlpool by the stated

deadline. Any objections must include (i) the Class Member's full name and current address and telephone number; (ii) the model number and serial number of the Class Refrigerator the Class Member owns or owned; (iii) a description of all of the Class Member's objections, the specific reasons therefore, and any and all supporting papers, including, without limitation, all briefs, written evidence, and declarations; and (iv) the Class Member's signature. The Notices shall specify that the requirement to file a written objection may be excused upon a showing of good cause and that the Court will require only substantial compliance with the requirements for submitting an objection.

E.    Settlement Class Members submitting objections who wish to appear either personally or through counsel at the Fairness Hearing and present their objections to the Court orally must include a written statement of intent to appear at the Fairness Hearing in the manner prescribed by the Notice. Only Settlement Class Members who specify in their objections that they intend to appear personally or through counsel at the Fairness Hearing will have the right to present their objections orally at the Fairness Hearing. Settlement Class Members who do not submit timely written objections will not be permitted to present their objections at the Fairness Hearing, subject to the Court's discretion.

F.    Any Class Member who does not so object by the timely filing and delivery of an objection (pursuant to the procedures set forth in the Notice) to the Court and to counsel for the Parties, shall be deemed to have waived, and shall forever be foreclosed from raising, any objection to the Settlement, subject to the Court's discretion to excuse the requirement of filing a written objection upon a showing of good cause.

## VIII.  CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY FEES AND COSTS AND SERVICE AWARDS TO PLAINTIFFS

A.   As part of this Settlement, Defendant has agreed to pay Class Counsel reasonable attorney fees and costs together with service awards to Plaintiffs, without reducing the amount of money available to pay Valid Claims submitted by Settlement Class Members or the amount of money to be paid for work performed by the Settlement Administrator.

B.   The amount of attorney fees and costs to be paid to Class Counsel shall be determined by the Court. After the Court preliminarily approves the Settlement, Class Counsel may submit a Fee Application to the Court. Class Counsel agree to request up to but not exceeding $1,160,000.00 as the reasonable amount of attorney fees, costs, and service awards to be paid by Defendant to Class Counsel and Plaintiffs, subject to Court approval. Whirlpool may request that the Court award less than $1,160,000.00 in Class Counsel's requested fees, costs, and service awards. In the event the Court awards the full $1,160,000.00, however, Whirlpool is obligated to pay the full amount. Class Counsel shall not seek and Defendant shall not pay supplemental attorney fees or costs for any work performed in the Lawsuit, the settlement of them, the administration of the Settlement, or in any appeal, after the date of the Fee Application.

C.   Defendant shall pay the Court-approved amount of attorney fees and costs and service awards, up to but not exceeding $1,160,000.00, in the form of one or more checks delivered into trust accounts to be identified by Class Counsel, within 30 days after the Effective Date. Class Counsel shall provide to Defendant's counsel in a timely manner all information necessary to enable Whirlpool to make such deposits within the time required. Under no circumstances will Defendant pay

more than $1,160,000.00 to Class Counsel and Plaintiffs for attorney fees and costs and service awards.

D.   Plaintiffs intend to seek Service Awards of up to but not exceeding $5,000.00 each to Nancy Paperno and Robert Gibbany in recognition of their representation of the Settlement Class. This agreed amount, to be paid out of the aforementioned allotment of fees and costs and service awards, will be subject to Court approval and will be included in Class Counsel's Fee Petition.

E.   Class Counsel shall have the authority to determine and make an allocation of their respective awards of attorney fees and costs to any counsel representing any of the Settlement Class who claim an entitlement to share in any fees or costs approved by the Court and paid by Whirlpool. Such allocations shall be made consistent with any agreements between and among those counsel. Any disputes regarding such allocations shall be resolved by the Court.

F.   Any issues relating to attorney fees and costs or to any Service Award are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Agreement and the Settlement. The Court's or an appellate court's failure to approve, in whole or in part, any award of attorney fees and costs to Class Counsel, or any Service Award, shall not affect the validity or finality of the Settlement, nor shall such non-approval be grounds for rescission of the Agreement, as such matters are not the subject of any agreement among the Parties other than as set forth above. In the event the Court declines to approve, in whole or in part, the payment of attorney fees or costs to Class Counsel or the payment of any Service Award in the amount sought by Class Counsel, the remaining provisions of this Agreement shall remain in full force and effect.

G.    To the extent the Court awards less than the $1,160,000.00 allocated between the parties as the reasonable amount of attorney fees, costs, and service awards to be paid by Defendant to Plaintiffs, the unused funds will be awarded to California ChangeLawyers, or any other organization selected by the Court, as a cy pres recipient.

## IX.    RELEASES

A.    As of the Effective Date of this Agreement, Plaintiffs and all Settlement Class Members who do not timely exclude themselves from the Settlement do forever release, acquit, and discharge Releasees from all manner of actions, causes of action, administrative claims, demands, debts, damages, costs, attorney fees, obligations, judgments, expenses, or liabilities for economic loss, in law or in equity, whether now known or unknown, contingent or absolute, including all claims that Plaintiffs or Settlement Class Members now have or, absent this Agreement, may in the future have had, against Releasees, by reason of any acts, omissions, harms, matters, causes, or events whatsoever that have occurred from the beginning of time up to and including October 29, 2024, and that arise from or relate to any of the defects, malfunctions, or inadequacies of the Class Refrigerators that are alleged or could have been alleged in the Lawsuit arising out of or relating to a Frost Clog Issue, including without limitation all claims for out-of-pocket expense, diminution-in-value, benefit-of-the-bargain, cost-of-repair, cost-of-replacement, statutory, or premium-price damages or restitution (the "Released Claims").

B.     This release, however, will not extinguish, and the Released Claims do not include, claims for personal injury or for damage to property other than to the Class Refrigerator itself.

C.     By executing this Agreement, the Parties acknowledge that, upon entry of the Final Approval Order by the Court, the Lawsuit shall be dismissed with prejudice, an order of dismissal with prejudice shall be entered, and all Released Claims shall thereby be conclusively settled, compromised, satisfied, and released as to the Releasees. The Final Approval Order shall provide for and effect the full and final release, by Plaintiffs and all Settlement Class Members, of all Released Claims.

D.     <u>Future or Unknown Harm and Waiver of Statutory Rights</u>: It is possible, although unlikely, that other injuries, damages, losses, or future consequences or results of the sale, purchase, use, non-use, need for repair, or repair of the Class Refrigerators are not currently known by Plaintiffs and Settlement Class Members and will develop or be discovered. The Release in this Agreement, and the compromise on which it is based, including the benefits available for Post-Notice Frost Clog Issues, is expressly intended to cover and include a release by Plaintiffs and each Settlement Class Member of all such future injuries, damages, losses, or future consequences or results, excluding any future injury to person or to property other than the Class Refrigerator itself, and including a release and waiver of all rights, causes of actions, claims, and lawsuit against the Releasees that may exist or arise in the future because of such future injuries, damages, losses, or future consequences or results of known or unknown injuries arising out of or relating to frost and ice buildup, failure of the defrost heating system, and/or failure of the dual

evaporator cooling system, featuring those parts that are alleged to have the potential to result in a Frost Clog Issue.

E.    Plaintiffs and each Settlement Class Member hereby expressly, knowingly, and voluntarily, waive any right conferred on him or her by Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Plaintiffs and Settlement Class Members expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code and of all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, Plaintiffs and the Settlement Class Members hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, that they have against Releasees. In furtherance of such intention, the release herein given by Plaintiffs and the Settlement Class Members to the Releasees shall be and remain in effect as a full and complete general release of all claims covered in Section IX.A, notwithstanding the discovery of existence of any such additional or different claims or facts.

F.    Plaintiffs and the Settlement Class Members expressly consent that this release shall be given full force and effect according to each of its terms and provisions, including those relating to unknown and unspecified claims, injuries, demands, rights, lawsuit, or causes of action as referenced above. Plaintiffs and the Settlement Class Members acknowledge and agree that this waiver is an essential and material term of this release and the compromise settlement that led to it, and that without this waiver the compromise settlement would not have been accomplished. Plaintiffs have been advised by their attorneys with respect to this waiver and, being of competent mind, understand and acknowledge its significance.

G.    Each Party hereto expressly accepts and assumes the risk that if facts with respect to matters covered by this Agreement are found hereafter to be other than or different from the facts now believed or assumed to be true, this Agreement shall nevertheless remain effective. It is understood and agreed that this Agreement shall constitute a general release and shall be effective as a full and final accord and satisfaction and is a bar to all actions, causes of action, costs, expenses, attorney fees, damages, claims, and liabilities whatsoever, whether or not now known, suspected, claimed or concealed, pertaining to the Released Claims of this Agreement.

H.    Notwithstanding the above, the Court shall retain jurisdiction over the Parties and the Agreement with respect to the future performance of the terms of the Agreement, and to assure that all payments and other actions required of any of the Parties by the Settlement are properly made.

## X.    COVENANT NOT TO SUE

Plaintiffs (i) covenant and agree that neither they, nor anyone authorized to act on their behalf, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Agreement, against the Releasees, or any of them, in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by the Releasees, or any of them, in connection with the Released Claims; (ii) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of them or any putative class of Class Refrigerator owners arising out of or relating to ~~frost and ice buildup, failure of the defrost heating system, and/or failure of the dual evaporator cooling system, featuring those parts that are alleged to have the potential to result in~~ a Frost Clog Issue; and (iii) agrees that this Agreement shall be a complete bar to any such action by Plaintiffs.

## XI.    REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

A.    Each Party has had the opportunity to receive, and has received, independent legal advice from his, her, or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income-tax consequences of this Agreement, and fully understands and accepts the terms of this Agreement.

B.    Plaintiffs represent and warrant that no portion of any claim, right, demand, action, or cause of action against any of the Releasees that Plaintiffs have or may have arising out of the Lawsuit or otherwise referred to in this Agreement, and no portion

of any recovery or settlement to which Plaintiffs may be entitled, have been assigned, transferred, or conveyed by or for Plaintiffs in any manner; and no Person or entity other than Plaintiffs has any legal or equitable interest in the claims, demands, actions, or causes of action referred to in this Agreement as those of Plaintiffs themselves.

C.    None of the Parties relies or has relied on any statement, representation, omission, inducement, or promise of the other Party (or any officer, agent, employee, representative, or attorney for the other Party) in executing this Agreement, or in making the Settlement provided for herein, except as expressly stated in this Agreement.

D.    Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that Party and his, her, or its attorneys.

E.    Each of the Parties is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his, her, or its attorneys.

F.    Each term of this Agreement is contractual and not merely a recital.

## XII.    NO ADMISSION OF LIABILITY

It is understood and agreed that the Settlement sums and the benefits provided in this Agreement, and this Settlement and release, are for the compromise of disputed claims and are not to be construed as or deemed to be an admission of any liability, fault, or responsibility on the part of any of the Releasees, by whom liability and fault are, and always have been, expressly and completely denied.

**XIII.    ADDITIONAL TERMS**

A.    <u>Extensions of Time</u>: Unless otherwise ordered by the Court, the Parties may agree to reasonable extensions of time to carry out any of the terms of this Agreement and Settlement without needing Court approval, so long as all actions required by this Agreement are concluded prior to the close of the claims period 180 days after entry of the Preliminary Approval Order.

B.    <u>Cooperation</u>: The Parties agree that they will abide by this Agreement and do all such acts, and prepare, execute, and deliver all such documents, as may reasonably be required to carry out the stated objectives of this Agreement.

C.    <u>Interpretation and Construction</u>: Each Party has participated in the negotiation and drafting of all provisions of this Agreement, has had an adequate opportunity to read, review, and consider with his, her, or its own counsel the effect of the language of this Agreement, and has agreed to its terms. Accordingly, the legal maxim that "ambiguity shall be interpreted against the drafter" has no relevance to the interpretation or construction of this Agreement.

D.    <u>Conditional Nature of Agreement</u>:

1.    At Plaintiffs' option, expressed in written notice to Defendant's counsel, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of Plaintiffs or the Settlement Class, or fails to enter the Preliminary Approval Order or the Final Approval Order in substantially the form submitted by the Parties.

2.    At Defendant's option, expressed in written notice to Class Counsel, this Agreement shall become null and void, and no obligation on the part of any

of the Parties will accrue, if (a) the Court declines to certify the Settlement Class as provided in the Preliminary Approval Order; or (b) the Court materially alters any of the terms of this Agreement to the detriment of Defendant, or fails to enter the Preliminary Approval Order or the Final Approval Order in substantially the form submitted by the Parties.

E.    <u>Severance/Severability</u>: With the exception of the provision for attorney fees and costs to Class Counsel and Service Awards to Plaintiffs, none of the terms of this Agreement is severable from the others. If the Court or an appellate court should rule that any term is void, illegal, or unenforceable for any reason, however, Defendant, in its sole discretion, and Plaintiffs, in their sole discretion (but acting in accord with their duties and obligations as Class Representatives), may elect to waive any such deficiency and proceed with the Settlement under the terms and conditions ultimately approved by the Court.

F.    <u>Return or Destruction of Confidential Documents</u>: Within thirty (30) days of the Effective Date, the Parties agree to return to the producing Party or destroy (with written confirmation of such destruction) all documents marked confidential pursuant to the Protective Order entered in the Lawsuit.

G.    <u>Governing Law</u>: With the exception of the Court's determination of a reasonable award of attorney fees and costs to Class Counsel, which the Parties agree shall be governed by federal law, this Agreement has been, and shall for all purposes be deemed to have been, negotiated, executed, and delivered within the State of California, and the rights and obligations of the Parties shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

H.   <u>Entire Agreement of the Parties</u>: This Agreement constitutes and comprises the entire agreement between the Parties with respect to the subject matter hereof. It supersedes all prior and contemporaneous oral and written agreements and discussions. It may be amended only by an agreement in writing, signed by the Parties.

I.   <u>Binding on Agents, Successors, and Assigns</u>: This Agreement is binding on, and shall inure to the benefit of, the Parties and their respective agents, employees, representatives, officers, directors, subsidiaries, assigns, heirs, executors, administrators, insurers, and predecessors and successors in interest.

J.   <u>No Extension of Whirlpool's Written Warranties</u>: In connection with this Agreement and Settlement, Whirlpool has not agreed to any extension of its written warranties for the Class Refrigerators. The only Settlement benefits are those expressly described in this Agreement.

K.   <u>Court Approval</u>: The parties agree to seek approval of this proposed Settlement in the United States District Court for the Northern District of California in *Paperno v. Whirlpool Corp.,* Case No. 3:23-cv-05114-RFL (N.D. Cal.).

## XIV.   CLASS COUNSEL CONTACT INFORMATION

A.   Any written notice to Class Counsel contemplated by this Agreement shall be sent to the following by first-class United States Mail and email:

> Laura R. Gerber
> Michael Woerner
> Andrew N. Lindsay
> KELLER ROHRBACK L.L.P.
> 1201 Third Avenue, Suite 3400
> Seattle, WA 98101-3052
> lgerber@kellerrohrback.com
> mwoerner@kellerrohrback.com
> alindsay@kellerrohrback.com

Alison E. Chase
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496, Fax (805) 456-1497
achase@kellerrohrback.com

Michael J. Brickman
James C. Bradley
Nina Fields Britt
Caleb M. Hodge
ROGERS, PATRICK, WESTBROOK & BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A (29464)
Post Office Box 1007
Mount Pleasant, SC 29465
mbrickman@rpwb.com
jbradley@rpwb.com
nfields@rpwb.com
chodge@rpwb.com

Kenneth Behrman
5855 Sandy Springs Circle
Suite 300
Atlanta, GA 30328
ken.behrman@behrmanlaw.com

B.    Any written notice to Defendant's counsel contemplated by this Agreement shall

be sent to the following by first-class United States Mail and email:

Andrew M. Unthank
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202
unthank@wtotrial.com

***SIGNATURES TO FOLLOW ON SEPARATE PAGES
AND MAY BE APPLIED BY ELECTRONIC MEANS***

47

## SIGNATURES OF THE PARTIES

Dated: ~~October 29~~December 5, 2024

_____
PLAINTIFF NANCY PAPERNO

_____
PLAINTIFF ROBERT GIBBANY

WHIRLPOOL CORPORATION

By: _____
Megan Blazina, General Counsel for North America

**SIGNATURES OF COUNSEL FOR APPROVAL**

READ AND APPROVED:

By: _____
       Alison E. Chase
       Class Counsel

By: _____
       Laura R. Gerber
       Class Counsel

By: _____
       Michael Woerner
       Class Counsel

By: _____
       Andrew N. Lindsay
       Class Counsel

By: _____
       Michael J. Brickman
       Class Counsel

By: _____
       James C. Bradley
       Class Counsel

By: _____
       Nina Fields Britt
       Class Counsel

By: _____
       Caleb M. Hodge
       Class Counsel

By: _____
       Kenneth Behrman
       Class Counsel

By: _____
       Andrew Unthank
       Counsel for Defendant