Laura R. Gerber (*Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, Washington 98101
(206) 623-1900
lgerber@kellerrohrback.com

***Attorney for Settlement Class Representatives and the Settlement Class***
(Additional Counsel Listed on Signature Block)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY PAPERNO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WHIRLPOOL CORPORATION,<br><br>Defendant. | Case No. 3:23-cv-05114-RFL<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:      May 13, 2025<br>Time:      1:30 p.m.<br>Judge:     Hon. Rita F. Lin<br>Location:  Courtroom 15, 18th Flr. |

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 2

       A.     Preliminary Approval Process ....................................................................... 2

       B.     Settlement Terms .......................................................................................... 2

       C.     Notice to the Class ........................................................................................ 4

       D.     Settlement Class Members' Response to the Settlement ................................ 5

III.   ARGUMENT ............................................................................................................ 5

       A.     The Settlement is Fair, Reasonable, and Adequate ........................................ 6

              1.     Rule 23(e)(2)(A): Adequate representation ....................................... 6

              2.     Rule 23(e)(2)(B): Arm's length negotiation ...................................... 7

              3.     Rule 23(e)(2)(C): Adequate relief ..................................................... 9

              4.     Rule 23(e)(2)(D): Equitable treatment ............................................ 13

              5.     The Settlement meets the remaining Ninth Circuit factors.............. 13

       B.     The Notice Plan Satisfied Due Process and Adequately Provided
              Notice to Class Members. ............................................................................ 18

              1.     The Dissemination of Notice was Proper. ....................................... 19

              2.     Notice Was Properly Given Under the Class Action Fairness Act. ... 19

       C.     The Court Should Certify the Settlement Class............................................ 20

              1.     Rule 23(a)(1): Numerosity ............................................................... 20

              2.     Rule 23(a)(2): Commonality............................................................ 20

              3.     Rule 23(a)(3): Typicality ................................................................. 21

              4.     Rule 23(a)(4): Adequacy of Representation ..................................... 21

              5.     Rule 23(b)(3): Predominance ........................................................... 22

              6.     Rule 23(b)(3): Superiority ................................................................ 24

IV.    CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ................................................19

*In re Apple Inc. Device Performance Litig.*,
  50 F.4th 769 (9th Cir. 2022) .....................................................19

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) ................................................10

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..............................................8, 9, 13

*Bostick v. Herbalife Int'l of Am., Inc.*,
  No. 13-2488-BRO, 2015 WL 12731932 (C.D. Cal. May 14, 2015)................14

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ...................................................8, 9

*Browne v. Am. Honda Motor Co.*,
  No. 09-06750-MMM, 2010 WL 9499072 (C.D. Cal. July 29, 2010)...............16

*Californians for Disability Rights, Inc. v. California Dept. of Transp.*,
  249 F.R.D. 334 (N.D. Cal. 2008).................................................22

*Cates v. Whirlpool Corp.*,
  No. 15-5980, 2017 WL 1862640 (N.D. Ill. May 9, 2017) .........................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010)..........................................10

*Chun-Hoon v. McKee Foods Corp.*,
  716 F.Supp.2d 848 (N.D. Cal. 2010)............................................15

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ....................................................17

*Corzine v. Whirlpool Corp.*,
  No. 15-05764-BLF, 2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) ..............17, 19

*Cruz v. Sky Chefs, Inc.*,
  No. 12-02705-DMR, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)................15

*Eisen v. Porsche Cars N. Am., Inc.*,
  No. 11-09405, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014).......................17

*G. F. v. Contra Costa Cty.*,
  No. 13-03667, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ....................................................12

*Glazer v. Whirlpool Corp.*,
  No. 1:08-wp-65000-CAB (N.D. Ohio Oct. 31, 2014)..................................................................11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)....................................................................................................... 9

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ........................................................................................................21

*Hefler v. Wells Fargo & Co.*,
  No. 16-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................. 9

*In re Hulu Priv. Litig.*,
  No. 11-03764, 2014 WL 2758598 (N.D. Cal. June 17, 2014).....................................................24

*In re Illumina, Inc. Sec. Litig.*,
  No. 16-3044, 2019 WL 6894075 (S.D. Cal. Dec. 18, 2019) ........................................................ 7

*Jabbari v. Farmer*,
  965 F.3d 1001 (9th Cir. 2020) ......................................................................................................22

*Johnson v. Railway Exp. Agency, Inc.*,
  421 U.S. 454 (1975) ......................................................................................................................24

*Just Film v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ......................................................................................................21

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ..................................................................................................23

*Kim v. Allison*,
  8 F.4th 1170 (9th Cir. 2021) .........................................................................................................13

*Lagunas v. Young Adult Inst., Inc.*,
  No. 23-654-RS, 2024 WL 1025121 (N.D. Cal. Mar. 8, 2024) ....................................................20

*Larsen v. Trader Joe's Company*,
  No. 11-05188-WHO, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014)............................................17

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...............................................................................................7, 16

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ........................................................................................................20

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
  713 F. Supp. 3d 660 (N.D. Cal. 2024).........................................................................................20

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 15, 18

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006) ...........................................................................20

*In re Netflix Priv. Litig.*,
   No. 11-0379-EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...........................10

*Oliveira v. Language Line Servs., Inc.*,
   No. 22-02410-PCP, 2025 WL 586589 (N.D. Cal. Feb. 24, 2025)........................... 5

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................................18

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ...........................................................................23

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ...............................................................................................24

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...............................................................................7, 8

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ...............................................................................18

*Satchell v. Fed. Express Corp.*,
   No. 03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)..................................... 7

*Saucillo v. Peck*,
   25 F.4th 1118 (9th Cir. 2022) ................................................................................. 6

*Schechner v. Whirlpool Corp.*,
   No. 2:6-12409, 2019 WL 4891192 (E.D. Mich. Aug. 13, 2019)..............................11

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal., 2020) ...........................................................................15

*Schuchardt v. L. Off. of Rory W. Clark*,
   314 F.R.D. 673 (N.D. Cal. 2016) ...........................................................................15

*Scott v. ZST Digital Networks, Inc.*,
   No. 11-3531-GAF, 2013 WL 12123989 (C.D. Cal. Mar. 27, 2013)......................... 8

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ...........................................................................20

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ..............................................................14, 15

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................................22

*Stiner v. Brookdale Senior Living, Inc.*,
  665 F. Supp. 3d 1150 (N.D. Cal. 2023)...................................................22

*Sugarman v. Ducati N. Am., Inc.*,
  No. 10-05246, 2012 WL 113361 (N.D. Cal. Jan. 12, 2012)....................18

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) ............................................................23

*Theodore Broomfield v. Craft Brew Alliance, Inc.*,
  2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ...........................................14

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  736 F. App'x 639 (9th Cir. 2018) ............................................................19

*In re Toys R Us–Delaware, Inc.–(FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ............................................................14

*Trosper v. Styker Corp.*,
  No. 13-cv-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014).........6

*Tyson Foods v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................22

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) ..................................................................22

*In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*,
  No. 2672, 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .........................18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...........................................................................20, 21

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ..................................................................20

*Wilson v. Tesla, Inc.*,
  No. 17-03763-JSC, 2019 WL 2929988 (N.D. Cal. July 8, 2019)................7

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ................................................................21

*Wren v. RGIS Inventory Specialists*,
  No. 06-05778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............15

*Zepeda v. PayPal, Inc.*,
  No. 10-2500-SBA, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ...........15

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................................ 20, 21, 22

Fed. R. Civ. P. 23(b) ........................................................................................ 20, 22, 24

Fed. R. Civ. P. 23(c) ................................................................................................... 18

Fed. R. Civ. P. 23(e) ............................................................................................. *passim*

**STATUTES**

28 U.S.C. § 1715(b) ............................................................................................. 18, 19

Cal. Civ. Code § 1791.1(c) ......................................................................................... 10

**OTHER AUTHORITIES**

4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. 2002) ................................ 11

W. Rubenstein, *Newberg on Class Actions*, § 4:50 (5th ed. 2012) ................................... 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

PLEASE TAKE NOTICE THAT on May 13, 2025, at 1:30 p.m., or at such other date and time as the Court may set, in the courtroom of the Honorable Rita F. Lin, United States District Judge for the Northern District of California, at the United States District Courthouse, 450 Golden Gate Ave., San Francisco, California 94102, Plaintiffs, on behalf of themselves and a proposed Settlement Class, will and hereby do move the Court for an order and judgment granting final approval of the Settlement Agreement, certifying the proposed Settlement Class for settlement purposes, and appointing Class Counsel and Plaintiffs to represent the Settlement Class.

Plaintiffs' Motion is based on Federal Rule of Civil Procedure 23, the Northern District's Procedural Guidance for Class Action Settlements, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Joint Declaration of Laura R. Gerber, James Bradley and Kenneth Behrman ("Joint Decl."), the Supplemental Declaration of Angeion Group ("Angeion Supp. Decl."), the pleadings and papers on file, and such other evidence as may be presented at the hearing on this matter. Plaintiffs respectfully request that this Court grant the Motion, along with the previously filed and pending Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, ECF No. 85. Copies of Plaintiffs' [Proposed] Order Granting Motion for Final Approval of Class Settlement and Plaintiffs' [Proposed] Judgment are separately submitted with this Motion. While Defendant Whirlpool Corporation ("Whirlpool") does not agree with all factual statements and legal arguments in the following Memorandum, it does not oppose the relief requested by this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Nancy Paperno and Robert Gibbany move for final approval of a proposed class action Settlement with Whirlpool. The Settlement reimburses Settlement Class Members—all persons who purchased (other than from resale) or otherwise obtained a Class Refrigerator for personal or household use within the United States and its territories from Whirlpool or its authorized resellers, subject to certain exclusions—whose Class Refrigerators' experience a Frost Clog Issue.[1] For Frost Clog Issues arising within eight years after manufacture of the refrigerator, Settlement Class Members will be entitled to cash reimbursement of certain out-of-pocket expenses that they incurred when they repaired and/or replaced their refrigerators.

The Court has preliminarily approved the proposed Settlement and directed notice to the Settlement Class. ECF No. 78. That notice has been sent directly to 238,643 Settlement Class Members and produced a significant response.[2] Angeion Supp. Decl. ¶ 19. Though the deadline to submit claims is not until June 18, 2025, the 2,306 claims submitted to date reflect a healthy claims rate that will likely compare favorably to analogous consumer class actions.[3]

The Settlement provides significant monetary benefits to Settlement Class Members. The Settlement negotiations were overseen by a respected mediator, and the Settlement terms are the product of hard-fought, arm's-length negotiations among experienced counsel versed with this case's legal and factual issues. The Settlement treats Settlement Class Members equitably. Plaintiffs and Class Counsel believe the Settlement is fair, reasonable, adequate, and in the best interests of Settlement Class, and they respectfully request that this Court grant final approval and certify the Settlement Class.

---

[1] The capitalized terms in this Memorandum have the meanings set forth in the Parties' Amended Class Action Settlement Agreement and Release ("Settlement Agreement" or "SA"). *See* ECF Nos. 74-2 and 85-2.

[2] Angeion disseminated notice via email to 148,193 Settlement Class Members who had a valid email address. Angeion Supp. Decl. ¶ 7. Angeion disseminated mailed notice to 90,192 Settlement Class Members who did not have an email address. *Id.* ¶ 14. Angeion also ran a comprehensive media notice campaign. *Id.* ¶¶ 20–22.

[3] *Id.* ¶ 26.

## II.    BACKGROUND

Plaintiffs respectfully incorporate this litigation's procedural history and background from their motion for preliminary approval, ECF No. 64, and Class Counsel's motion for attorney's fees, reimbursement of expenses, and service awards, ECF No. 85. In this section, Plaintiffs address the preliminary approval process, the proposed Settlement terms, notice distribution, and Settlement Class Members' response to the proposed Settlement.

### A.    Preliminary Approval Process

On October 30, 2024, Plaintiffs moved for preliminary approval of the proposed Settlement. ECF No. 64. In response, the Court requested a supplemental filing concerning 18 topics relating to the preliminary approval motion. ECF No. 70. The parties addressed the Court's questions and revised the notices, claim forms, and Settlement Agreement consistent with the Court's inquiries and requests. ECF Nos. 71, 74. Then, on December 20, 2024, after holding a preliminary approval hearing, the Court preliminarily approved the proposed Settlement as fair, reasonable, and adequate. ECF No. 78. As part of the preliminary approval process, on November 1, 2024, Plaintiffs moved to amend their complaint to add a nationwide claim and limit their class definition to purchasers of the three-door models at issue. ECF No. 65. The Court granted Plaintiffs' motion to amend on February 3, 2025. ECF No. 80. The Court also stayed Whirlpool's deadline to answer Plaintiffs' amended complaint. ECF No. 79. Class Counsel filed their motion for attorneys' fees, reimbursement of expenses, and service awards on February 14, 2025. ECF No. 85. Finally, on February 24, 2025, the Court issued an order to show cause regarding Settlement Class Members' ability to request exclusion through an interactive online claim form. ECF No. 87. In response, the Settlement Administrator updated the Settlement Website to include an interactive online exclusion form, extended the exclusion deadline to April 11, 2025, and sent an updated email notice. ECF Nos. 88, 88-1. The Court then discharged its show cause order. ECF No. 89.

### B.    Settlement Terms

As part of preliminary approval, on December 5, 2024, the parties filed an Amended Settlement Agreement, ECF No. 74-2, which the Court preliminarily approved as fair, reasonable, and adequate, ECF No. 78. The Amended Settlement Agreement provides Settlement Class Members with a cash

payment to compensate them for expenses they incurred repairing and/or replacing their refrigerators in response to Frost Clog Issues.

**Repair Costs:** Under the Settlement Agreement, all purchasers of Class Refrigerators can receive compensation for any out-of-pocket costs they incurred addressing a Frost Clog Issue at any point between their refrigerator's purchase date and eight years following their refrigerator's date of manufacture or purchase. For each Frost Clog Issue a Settlement Class Member experienced, Whirlpool will reimburse or credit the Settlement Class Member for up to $300—depending on when the Frost Clog Issue occurred—in out-of-pocket expenses the Settlement Class Member incurred repairing their refrigerator. *See* SA (ECF No. 74-2) § IV.A.3.a. And to address Frost Clog Issues that have not yet occurred, the Settlement Agreement makes this relief available to Settlement Class Members through December 2028. ECF No. 78 ¶ 10.[4]

**Replacement Costs:** As added compensation, under the Settlement Agreement, Settlement Class Members who incurred out-of-pocket expenses addressing two or more Frost Clog Issues and replaced their refrigerator can receive reimbursement of up to 75% of their Class Refrigerator's original purchase price, depending on when the replacement occurred and whether they requested replacement from Whirlpool before buying a new refrigerator. *See* SA (ECF No. 74-2) § IV.A.3.b. These replacement benefits are also available to Settlement Class Members through December 2028 if they submit claims within 90 days after purchasing a replacement. ECF No. 78 ¶ 10; SA (ECF No. 74-2) § IV.A.2.g.

As detailed in Plaintiffs' motion for preliminary approval, ECF No. 64, and Class Counsel's motion for attorneys' fees, ECF No. 85, the Settlement is an outstanding result because it provides substantial and immediate payments to Settlement Class Members who were at a significant risk of recovering nothing had this case continued. Furthermore, Whirlpool also agreed to pay notice and administration costs. *See* SA (ECF No. 74-2) § V.B. Moreover, any attorneys' fees, expenses, or service

---

[4] The Settlement also directs Whirlpool to publish a Technical Service Pointer ("TSP") that informs Whirlpool's authorized service providers of the relief available to Settlement Class Members. *See* Settlement Agreement (ECF No. 74-2) § V. K.

1   awards the Court awards will be paid separately and will not reduce the relief available to Settlement

2   Class Members. *See* SA (ECF No. 74-2) § VIII. A.

3   **C.    Notice to the Class**

4          Since the Court preliminarily approved the Settlement, Class Counsel and Whirlpool have

5   worked with the Settlement Administrator to implement the notice plan and administer the claims

6   process. After analyzing Whirlpool's records and data, on January 31, 2025, the Settlement

7   Administrator emailed notice to 148,193 Settlement Class Members and direct mailed notice to 90,192

8   Settlement Class Members for whom a valid email address could not be identified. Angeion Supp.

9   Decl. ¶¶ 7, 14. 15,783 of the emailed notices came back undeliverable. *Id.* ¶ 8. The Settlement

10  Administrator was then able to identify 6,350 updated email addresses for the emailed notices that

11  came back undelivered and sent notice to the updated emails. *Id.* ¶¶ 9–10. 1,402 of those emailed

12  notices came back undeliverable. *Id.* ¶ 10. Additionally, on or around March 5, 2025, the Settlement

13  Administrator sent 147,942 Updated Summary Notices via email to the 143,902 unique Settlement

14  Class Members for whom the Settlement Administrator had identified potentially valid email addresses

15  based on its efforts up to that date. *Id.* ¶ 12. 13,197 of those updated email notices came back as

16  undeliverable. *Id.* Furthermore, 5,583 of the originally mailed notices came back as undeliverable.

17  *Id.* ¶ 16. The Settlement Administrator was then able to locate updated addresses for 4,031 of those

18  undeliverable recipients, and after re-sending notice to the updated addresses, 177 notices came back

19  undeliverable. *Id.* ¶ 17. As of the date of this filing, 139,227 unique Settlement Class Members have

20  been emailed a Summary or Updated Summary notice that did not come back as undeliverable and

21  88,463 unique Settlement Class Members were mailed a Summary Notice that did not come back as

22  undeliverable. *See id.* ¶¶ 13, 18. The Settlement Administrator estimates that approximately 95%, or

23  227,690 of the 238,643 unique Settlement Class Members on the Class List were successfully delivered

24  the Summary Notice via mail or email. *Id.* ¶ 19.

25         In addition to direct mail and email notice, to reach Settlement Class Members who did not

26  appear in Whirlpool's records, the Settlement Administrator performed a comprehensive media notice

27  campaign consisting of internet banner advertisement notice, social media notice via Facebook and

28  Instagram, and a paid search campaign via Google. *See* Angeion Supp. Decl. ¶¶ 20–22. The Settlement

Administrator has also established a user-friendly Settlement Website, and a toll-free hotline dedicated to the Settlement. *Id.* ¶¶ 23–25. Pursuant to the Court's instructions, ECF No. 88-1, the Settlement Website was revised on February 25, 2025, ECF No. 88-1. As of the date of this filing, 65,722 unique users have visited the Settlement Website, the toll-free hotline has received 1,239 calls about the Settlement, and the media notice campaign has resulted in approximately 12,497,986 impressions, resulting in 52,415 clicks. *See* Angeion Supp. Decl. ¶¶ 25, 22. In addition, Class Counsel have responded to 89 inquiries (emails, telephone calls, and letters) about the Settlement from Settlement Class Members. *See* Joint Decl. ¶ 20. All but one of these inquiries were questions about Settlement benefits or the claims process. *See id.*

**D.      Settlement Class Members' Response to the Settlement**

Class Members have overwhelmingly responded in favor of the Settlement. The claims deadline for Past Frost Clog Issues is June 18, 2025, so Settlement Class Members have two more months to file claims. *See* ECF No. 78 ¶ 20. The claims period will continue through 2028 for Post-Notice Frost Clog Issues. *See* ECF No. 78 ¶ 10. Objections had to be filed with the Court by March 21, 2025, ECF No. 78, and the opt-out deadline is April 11, 2025, ECF No. 89. To date, 2,306 claims have been received, including a notable increase in claims following dissemination of the updated email notice on or around March 5, 2025. *See* Angeion Supp. Decl. ¶ 26; Joint Decl. ¶ 15. By contrast, only 26 Settlement Class Members have opted out, and only two Settlement Class Members have objected to the Settlement. Angeion Supp. Decl. ¶ 27; ECF Nos. 83, 90.

### III.      ARGUMENT

Final approval is a three-step inquiry. First, the Court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Second, it must determine whether the notice the class members received comports with Fed. R. Civ. P. 23 and constitutional due process requirements. And third, it must certify the proposed Settlement Class. *See* Fed. R. Civ. P. 23; *Oliveira v. Language Line Servs., Inc.*, No. 22-02410-PCP, 2025 WL 586589, at *6–10 (N.D. Cal. Feb. 24, 2025). The Settlement meets each of these requirements.

1    **A.    The Settlement is Fair, Reasonable, and Adequate.**

2           Courts may approve a proposed class action settlement "only after a hearing and only on finding

3    that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and

4    class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;

5    (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of

6    trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

7    including the method of processing class-member claims; (iii) the terms of any proposed award of

8    attorney's fees, including timing of payment; and (iv) any agreement required to be identified under

9    Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ.

10   P. 23(e)(2). Where, as here, "the parties negotiate a settlement agreement before the class has been

11   certified, settlement approval requires a higher standard of fairness and a more probing inquiry than

12   may normally be required under Rule 23(e)." *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022)

13   (internal citation omitted).

14          **1.    Rule 23(e)(2)(A): Adequate representation**

15          Settlement Class Representatives Nancy Paperno and Robert Gibbany do not have any interests

16   antagonistic to other Settlement Class Members, whose interests they will continue to vigorously

17   protect. Settlement Class Representatives volunteered to represent the Settlement Class, participated

18   actively in the Action, and remain committed to vigorously prosecuting this case in the Settlement

19   Class's best interests. *See Trosper v. Styker Corp.*, No. 13-cv-0607-LHK, 2014 WL 4145448, at *12

20   (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a rudimentary understanding of the present action

21   and . . . a demonstrated willingness to assist counsel in the prosecution of the litigation.") (citation

22   omitted). Class Counsel have significant experience prosecuting consumer protection class actions in

23   this district and nationwide. *See* ECF No. 64-1 ¶¶ 23–26. They devoted the resources necessary to see

24   this case through despite significant risk. *Id.* ¶¶ 31–35; ¶¶ 8–13 (describing Class Counsel's efforts).

25   They have been guided by the Settlement Class Members' interests throughout this case and present

26   this Settlement as being in the Settlement Class Members' best interests. *Id.* ¶¶ 17–22.

27

28

1

2.      **Rule 23(e)(2)(B): Arm's length negotiation**

2       The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive,

3   negotiated resolution" in approving class action settlements. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d

4   948, 965 (9th Cir. 2009). This Settlement arises out of an arms-length negotiation between Class

5   Counsel and Whirlpool, overseen by Hunter R. Hughes III, a respected mediator, following initial

6   discovery. Class Counsel undertook a substantial pre-filing investigation before filing the Complaint,

7   including interviewing potential plaintiffs and reviewing materials such as Whirlpool's TSPs, message

8   board posts, web pages, marketing materials, and articles about the industry, as well as engaging subject

9   matter consultants to analyze the viability of potential claims. ECF No. 64-1 ¶ 9. Class Counsel

10  acquired a wide range of information about the Class Refrigerators and their cooling failures, allowing

11  them to reasonably evaluate their claims' strengths and weaknesses and balance the benefits of

12  settlement against the risks of continued litigation. *Id.* ¶ 4. Class Counsel also sought and received

13  extensive informal discovery from Whirlpool in preparation for mediation. *Id.* ¶ 14. Such discovery

14  included Whirlpool's confidential production of complaints data, showing how consumers and

15  warranty-service providers began contacting Whirlpool about the Class Refrigerators' cooling issues

16  caused by frost and ice build-up as early as 2013, and further data to help Plaintiffs' expert reasonably

17  estimate the rate at which the Class Refrigerators suffered such cooling failures. *Id.* "In the context of

18  class action settlements, as long as the parties have sufficient information to make an informed decision

19  about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Wilson v. Tesla,*

20  *Inc.*, No. 17-03763-JSC, 2019 WL 2929988, at *8 (N.D. Cal. July 8, 2019) (quoting *Linney v. Cellular*

21  *Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). The Settlement was ultimately only reached after

22  mediation because of Mr. Hughes' mediator proposal, demonstrating the Settlement was reached

23  without collusion. ECF No. 64-1 ¶ 15. *See In re Illumina, Inc. Sec. Litig.*, No. 16-3044, 2019 WL

24  6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement

25  process confirms that the settlement is non-collusive." (quoting *Satchell v. Fed. Express Corp.*, No. 03-

26  2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

27

28

After accepting the mediator's proposal on August 12, 2024, the Parties again negotiated for over two months to arrive at the terms of the initial Settlement Agreement, executed on October 29, 2024. ECF No. 64-1, ¶¶ 15, 17. These protracted, lengthy, and adversarial negotiations support finding the Settlement was "the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965. *See Scott v. ZST Digital Networks, Inc.*, No. 11-3531-GAF, 2013 WL 12123989, at *6 (C.D. Cal. Mar. 27, 2013) ("There can be little doubt that the negotiations … were conducted at arm's-length by counsel over the span of several months, were serious, informed and non-collusive," especially when "[t]he parties were represented by experienced counsel who bargained in an adversarial manner").

### a.     The Settlement also satisfies the *Bluetooth* factors.

Courts must also "scrutinize agreements for 'subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.* ("*Bluetooth*"), 654 F.3d 935, 947 (9th Cir. 2011)). The three *Bluetooth* factors are: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) when the parties negotiate a "clear sailing" agreement for the payment of attorneys' fees; and (3) when the parties arrange for unawarded benefits to revert to defendants rather than being added to the class fund. *Bluetooth*, 654 F.3d at 947.

None of the *Bluetooth* factors are present here. As to the first factor, all class members will receive the benefit of an extended service plan. Plaintiffs' expert has valued this extended service plan at $153.08 per Class Refrigerator, representing an appropriate portion of the estimated market cost of a full seven-year extended (in addition to the one-year original warranty) service plan. ECF No. 64-5 ¶¶ 14–15. Plaintiffs' expert valued the extended service plan for the Settlement Class at $54.1 million. *Id.* ¶ 19. The 2,306 current claims have not yet been adjudicated by the Settlement Administrator, Whirlpool, and Class Counsel for validity and amounts owed, and the claims period remains open.[5] Further, the claims period for reimbursements of past costs remains open until June 2025, with future claims for Post-Notice Frost Clog Issues available through 2028. Understanding these uncertainties, in

---

[5] Because the claims period is still open, this number will certainly increase.

preliminarily estimating the value of the claims made for reimbursement of out-of-pocket repair and replacement costs, Settlement Class Members could be expected to receive between $684,400 and $2,054,400.[6] For the above reasons, Class Counsel expects this preliminary payout range to change between the date of this filing and the final adjudication of all claims. Class Counsel have requested fees, costs, and service awards in the amount of $1,160,000. *See* ECF No. 85. Based on the settlement benefits detailed above, if Class Counsel is awarded this full amount, they will not receive a disproportionate share of the Settlement, particularly considering the value of the extended service plan. The second *Bluetooth* factor proscribes "clear sailing agreements" in which a defendant agrees not to challenge agreed-upon fees for class counsel. *See Briseño*, 998 F.3d at 1026–27 ("A clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members."). No such agreement exists here. *See* SA (ECF No. 74-2) §§ VIII.B, VIII.F. Finally, the third factor is also not present because unawarded fees will be directed to a *cy pres* recipient. *Id.* § VIII.G.

### 3.    Rule 23(e)(2)(C): Adequate relief

In its Rule 23(e) analysis, "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)–(D) advisory committee's note to 2018. "The Court therefore examines 'the amount offered in settlement.'" *Hefler v. Wells Fargo & Co.*, No. 16-05479-JST, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018), (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The Settlement is valuable and reimburses Class Members in cash for their out-of-pocket repair and replacement costs. The Settlement Agreement's terms essentially constitute an eight-year extended service plan[7] to repair Frost Clog Issues, which Plaintiffs' expert valued at $54.1 million for the

---

[6] Plaintiffs' expert estimated the failure rate of the Class Refrigerators to be between 13.6% and 22.5%, *see* ECF No. 64-5 ¶¶ 23, which means between 48,144 and 79,650 Class refrigerators were impacted by Frost Clog Issues (13.6% to 22.5% of the approximate 354,000 Class Refrigerators). Thus, the current 2,306 claims represent between 2.9% and 4.8% of the Class Refrigerators impacted by Frost Clog Issues. Because Plaintiffs' expert determined the maximum payout of repair and replacement reimbursements to be between $23.6 million and $42.8 million, *see id.* ¶ 35, Whirlpool can be expected to pay out somewhere between $684,400 (2.9% of $23.6 million) and $2,054,400 (4.8% of $42.8 million) in repair and replacement reimbursements for the 2,306 current claims.

[7] The settlement extends repair benefits from one year (the present warranty) to eight years.

Settlement Class. ECF No. 64-5 ¶¶ 12–19. Alternatively, as stated above, Whirlpool can be expected to pay out somewhere between $684,400 and $2,054,400. *See, supra*, note 6. As mentioned above, Class Counsel anticipates that this payout range will change between the date of this filing and the final adjudication of all claims. While a substantial value on its own, this relief is particularly reasonable when considering the risks of continued litigation.

### a.    Rule 23(e)(2)(C)(i): Costs, risks, and delay of continuing litigation

Continuing litigation presents significant risks that Whirlpool might prevail at summary judgment, at trial, or on appeal, resulting in no recovery at all for Settlement Class Members. And while Plaintiffs believe a class would be certified for at least some, if not all, of their claims, Plaintiffs recognize the significant risk of an adverse class certification ruling by this Court or on appeal. Should the Action continue, there is a risk discovery would not support Plaintiffs' defect theory or that this Court, or an appellate court, could disagree that the evidence supports Plaintiffs' defect theory. Varying causes for the Frost Clog Issues could defeat class certification. *See In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 365 (N.D. Cal. 2018) (explaining, in the context of UCL and CLRA claims, that if "there is a mismatch between the alleged defects and the alleged misrepresentations," then "Plaintiffs' claims would fail on a class-wide basis"). And even if Plaintiffs successfully certified one or more classes, there would be a risk that the Court could later decertify the class. *See In re Netflix Priv. Litig.*, No. 11-0379-EJD, 2013 WL 1120801, at \*6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.").

There are also claim-specific risks of continuing to litigate. For the breach of implied warranty claims, Plaintiffs alleged Whirlpool's fraudulent concealment tolled the statute of limitations. Am. Compl., ECF No. 65-2 ¶¶ 74–85. Discovery will reveal the extent to which Plaintiffs' tolling theory prevails. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2010) (fraudulent concealment is fact-intensive and thus requires an opportunity for discovery for plaintiffs to produce evidence of it). Further, the Song-Beverly Act provides for a one-year implied warranty of merchantability. Cal. Civ. Code § 1791.1(c). Plaintiffs alleged their refrigerator began experience cooling failures 22 months after they bought it. *See*, ECF No. 65-2 ¶¶ 49, 52. As a result, this Court, or an appellate court, could rule the implied warranty period expired. For the consumer

protection claims, which require proving pre-sale knowledge, the Court ruled Plaintiffs adequately alleged Whirlpool's pre-sale knowledge based on the consumer complaints and the TSPs. *See* ECF No. 49 at 4. The success of these claims, however, would turn on discovery obtained and Plaintiffs' ability to prove Whirlpool's pre-sale knowledge.

Whirlpool has successfully defeated class certification and prevailed at trial in similar product performance cases and would have fought aggressively for similar results here. *E.g.*, *Schechner v. Whirlpool Corp.*, No. 2:6-12409, 2019 WL 4891192 at *1 (E.D. Mich. Aug. 13, 2019) (denying class certification); *Cates v. Whirlpool Corp.*, No. 15-5980, 2017 WL 1862640 at *1 (N.D. Ill. May 9, 2017) (denying class certification); *Glazer v. Whirlpool Corp.*, No. 1:08-wp-65000-CAB (N.D. Ohio Oct. 31, 2014) (ECF No. 491) (entering judgment in Whirlpool's favor following jury trial).

Beyond the claim-specific risks, continuing this Action would be expensive, complex, uncertain, and lengthy. And "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002). Resolving the Action avoids the uncertainty and expense of additional litigation and substantially benefits the Settlement Class by providing certain and immediate recovery without having to face the risks inherent with protracted litigation.

### b.     Rule 23(e)(2)(C)(ii): Method of distribution of settlement funds

The process for distributing funds is straightforward and accessible to Settlement Class Members. Settlement Class Members may submit their claims, either online or by mail or email, to Angeion. ECF No. 88-1 ¶ 4. While submitting a claim, Settlement Class Members are afforded a range of digital payment options to choose from, or they can elect to receive a paper check. *See* ECF No. 78-4 at 5; ECF No. 78-5 at 6. Should Settlement Class Members have questions regarding the claim submission process, there is a toll-free hotline number and the Settlement Website has an FAQ page to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. Angeion Supp. Decl. ¶¶ 23–24. Class Counsel have also responded to inquiries from 89 potential Settlement Class Members. *See* Joint Decl. ¶ 20. As a result, the method of distribution provides no barrier to delivering funds for Valid Claims to Settlement Class Members as expeditiously as possible.

### c.    Rule 23(e)(2)(C)(iii): Attorneys' fees and expenses[8]

The Settlement provides for payment of reasonable attorneys' fees, costs, and service awards. ECF No. 74-2 § VIII.A. In this case, the Parties only negotiated attorneys' fees after reaching agreement on the Settlement's key terms for the Settlement Class. ECF No. 64-1 ¶¶ 26–31. Further, an experienced and neutral mediator oversaw the fee negotiations, with the fee agreement based upon a mediator's proposal that the Parties ultimately agreed on. *See G. F. v. Contra Costa Cty.*, No. 13-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"). Class Counsel has received only one comment about the fee request, from an individual who has had no problems with their refrigerator. *See* Joint Decl. ¶ 8. The lack of response to Class Counsel's fee request supports finding the fee request is fair and reasonable. Additionally, the Settlement does not include a "clear sailing" agreement, and final approval is not contingent upon approving the requested attorneys' fees, costs, or service awards. SA (ECF No. 74-2) §§ VIII.B, VIII.F. The Settlement is also non-reversionary—under no circumstances will Whirlpool receive any of the settlement funds back, even if the Court does not award the requested fees, litigation costs, and service awards. *Id.* § VIII.G. As to the timing of payment, Whirlpool will only pay the Court-approved attorneys' fees, costs, and service awards after the Settlement has become final.[9] And pursuant to this Court's civil standing order, Class Counsel propose withholding 10% of attorneys' fees until after the filing of a Post-Distribution Accounting. This factor supports a determination that the Settlement is fair, reasonable, and adequate.

### d.    Rule 23(e)(2)(C)(iv): Other agreements

The fourth Rule 23(e)(2)(C) factor requires disclosure of "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). Class Counsel have jointly represented

---

[8] A more complete discussion of Plaintiffs' request for attorneys' fees and expenses appears in Class Counsel's fee motion, ECF No. 85.

[9] Under the Settlement, Whirlpool shall pay attorneys' fees, costs, and service awards "within 30 days after the Effective Date." SA (ECF No. 74-2) § VIII.C. The Settlement defines Effective Date as "the first date that is three business days after all of the following have occurred: (i) the Court has entered an order granting final approval of the Settlement Agreement in accordance with the terms of this Agreement; (ii) the time for any challenge to the Settlement, both in the Court and on appeal, has elapsed; and (iii) the Settlement has become final, either because no timely challenge was made to it or because any timely challenge has been finally adjudicated and rejected." *Id.* § I.N.

1    Plaintiffs, and they have no "agreement in connection with the proposal [i.e., the settlement]." Their

2    only agreement is to share the responsibility for the case and the fees, if any, they generate.

3          **4.      Rule 23(e)(2)(D): Equitable treatment**

4          Settlement Class Members are treated equitably. The Settlement provides equal access to

5    financial reimbursement for all Settlement Class Members who timely submit Valid Claims. Each

6    Settlement Class Member's monetary benefit will correspond to proof of prior out-of-pocket repair

7    and/or replacement costs, with those who incurred greater costs receiving greater reimbursement. This

8    Settlement achieves equity among all Settlement Class Members.

9          **5.      The Settlement meets the remaining Ninth Circuit factors.**

10         In the Ninth Circuit, "a district court examining whether a proposed settlement comports with

11   Rule 23(e)(2) is guided by the eight '*Churchill* factors'": (1) "the strength of the plaintiff's case"; (2)

12   "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining

13   class action status throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of

14   discovery completed and the stage of the proceedings"; (6) "the experience and views of counsel"; (7)

15   "the presence of a governmental participant"; and (8) "the reaction of the class members of the

16   proposed settlement." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth*

17   *Headset Prods. Liab.*, 654 F.3d 935, 940 (9th Cir. 2011)). Many of these factors, such as the risk and

18   duration of further litigation and the amount offered, overlap with Rule 23(e)(2)(C) factors and are

19   addressed above. *See supra* Section III.A.1–4. The remaining factors also favor final approval.

20         **a.      Class Members' response has been overwhelmingly positive.**

21         As of the date of this filing, a total of 227,690 potential Settlement Class Members have been

22   directly notified of the Settlement Agreement. *See* Angeion Supp. Decl. ¶ 19. As of this date, the

23   Settlement Administrator has received 2,306 claims. *Id.* ¶ 26. Objections were to be filed with the Court

24   no later than March 21, 2025, ECF No. 78, and the Opt-Out deadline is April 11, 2025, ECF No. 89.

25   Out of the entire Settlement Class, only 26 Settlement Class Members have opted out and only two

26   Settlement Class Members have objected to the Settlement. Angeion Supp. Decl. ¶¶ 27–28.

27         At the time of preliminary approval, based on the proposed notice campaign, the Settlement

28   Administrator anticipated between a 0.5% and 1.5% claims rate. ECF No. 64-4 ¶ 49. As of the date of

this filing, there are 2,306 claims. There are a few ways to calculate a claims rate. The Settlement Class consists of approximately 354,000 members—representing the total number of Class Refrigerators shipped to customers in the United States. ECF No. 64-1 ¶ 18. Based on the total population of Class Refrigerators, the claims filed to date represent a 0.65% claims rate. As noted above, Settlement Class Members have until June 18, 2025, to submit claims, and Class Counsel expects that the total number of claims will continue to increase.

But not all Class Refrigerators experience Frost Clog Issues to the same degree. Plaintiffs' expert estimated, based on a review of Whirlpool's claims databases, that the Class Refrigerators' failure rate due to Frost Clog Issues was between 13.6% and 22.5%—or 48,144 to 79,650 Class Refrigerators. ECF No. 64-5, ¶ 23. Under this framework, the 2,306 claims filed to date represent a 2.8% to 4.7% claims rate. *See* Joint Decl. ¶ 14.

The Court may alternatively calculate a claims rate based on the population of Settlement Class Members who received direct notice. *See Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1257 (C.D. Cal. 2016) (calculating claims rate based on number of class members who received direct notice). A total of 227,690 unique individuals received notice of the Settlement via the email or mailed notice campaign. *See* Angeion Supp. Decl. ¶ 19.[10] In response to the notice campaigns, the 2,306 claims submitted represent a claims rate of 1.01% based on those who received direct notice. Because direct notice could not be provided to the entire Settlement Class, *see generally* Joint Decl., such a claims rate is reasonable, *see In re Toys R Us–Delaware, Inc.–(FACTA) Litig.*, 295 F.R.D. 438, 468 n.134 (C.D. Cal. 2014) (claim rates in consumer litigation generally range from two to 20 percent, but when direct notice is not possible for the entire class, "claims filing may be depressed"). In sum, however the Court makes its calculation, the claims rate, which will likely continue to increase, supports approving the Settlement. *See, e.g., Bostick v. Herbalife Int'l of Am., Inc.*, No. 13-2488-BRO, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) (approving settlement with "response rate of less than 1%"); *Theodore Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5,

---

[10] It should be noted that although media notice does not equal direct notice, additional attempts have been made to reach Settlement Class Members through media notice. Angeion Supp. Decl. ¶¶ 20–22.

2020) (approving settlement with response rate of "about two percent"); *See Spann*, 211 F. Supp. 3d at 1257 (finding 2.75% claims rate reasonable).

The substantial participation in the Settlement and small number of exclusions and objections demonstrate that Settlement Class Members are overall in favor of the Settlement, which supports granting final approval. *See, e.g.*, *Zepeda v. PayPal, Inc.*, No. 10-2500-SBA, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) ("[T]he indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable."); *Cruz v. Sky Chefs, Inc.*, No. 12-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 852 (N.D. Cal. 2010) (approving settlement where 4.86% of the class opted out); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal., 2020) (receiving a small number of exclusions supports granting final approval); *Schuchardt v. L. Off. of Rory W. Clark*, 314 F.R.D. 673, 686 (N.D. Cal. 2016) (same).

### b.     Only two formal objections have been received.

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Wren v. RGIS Inventory Specialists,* No. 06-05778-JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)). In other words, the Court can infer the Settlement is fair, adequate, and reasonable if there are only a few objections to it. *Schuchardt*, 314 F.R.D. at 686 (N.D. Cal. 2016).

Out of the more than 227,690 Settlement Class Members who received direct notice and over 89 people who contacted Class Counsel, or Angeion, only two, Eric Smart and Husnu Kaplan, filed statements with the Court objecting to the Settlement. Neither objection provides grounds for rejecting the Settlement. *See* ECF Nos. 83 and 90. Mr. Smart asserts the Settlement is inadequate because $300 in repair costs is insufficient, in his view, to replace his Class Refrigerator's evaporator unit. *Id.* Mr. Smart ultimately opted not to repair his unit because of the estimated cost of repairs. *Id.* Mr. Smart argues Whirlpool should "be forced to either pay for a full replacement of the evaporator unit or the

entire refrigerator." *Id.* Class Counsel contacted Mr. Smart by telephone and explained to him that because his refrigerator was manufactured in late 2016, he could still be eligible for coverage under the settlement for Post-Notice Frost Clog repair costs, to the extent he purchased the unit within the eight-year window. *See* Joint Decl. at ¶ 18. Mr. Smart explained he did not think the $300 repair maximum was adequate and informed Class Counsel that he wishes to maintain his objection. *Id.*

Similarly, Mr. Kaplan asserts the Settlement is not adequate because it does not provide sufficient relief for class members who experience the frost clog issue with older refrigerators. *See* ECF No. 90. Mr. Kaplan also says the replacement compensation under the settlement is too limited because he attempted to fix the refrigerator himself and requests that the Settlement include a "more generous replacement option or, preferably, a free-of-charge repair option." *Id.* Class Counsel also contacted Mr. Kaplan by telephone and explained that he could make a claim for the cost of his repair parts under the Settlement and that the Settlement Administrator would decide his eligibility for reimbursement. *See* Joint Decl. ¶ 19. Mr. Kaplan indicated he wishes to maintain his objection.

Class Counsel provided both objectors with information about how to appear at the final approval hearing on Zoom. *Id.* ¶¶ 18–19. Mr. Smart stated he did not plan to attend, and Mr. Kaplan stated that he would attend the final fairness hearing via Zoom. *Id.* ¶ 19.

The Court should overrule the two objections that have been raised. Achieving the Settlement was inherently an act of compromise, and obtaining full refunds, brand new refrigerators, relief for refrigerators older than 8 years old, and compensation for spoiled food for Settlement Class Members were not options available during negotiations, despite Class Counsel's efforts. *See Linney*, 151 F.3d at 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." (cleaned up)). In objecting to the relief provided by the Settlement, the objectors do not adequately take into consideration the risks and delays involved in proceeding to class certification, summary judgment, or trial. The Settlement provides Settlement Class Members with timely, meaningful relief whereas further litigation (and subsequent appeals) would have had an uncertain outcome, resulted in significant additional incurred costs, and substantially delayed any recovery. *See Browne v. Am. Honda Motor Co.*, No. 09-06750-MMM, 2010 WL 9499072, at *12 (C.D. Cal. July 29, 2010) ("Estimates of what constitutes a fair settlement figure are tempered by factors such

as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."). The Settlement should not be rejected merely because it could have been better. *See Corzine v. Whirlpool Corp.*, No. 15-05764-BLF, 2019 WL 7372275, at \*9 (N.D. Cal. Dec. 31, 2019) ("It is not unfair that the Settlement does not provide a replacement refrigerator based on a faulty drain tube or that it does not cover the entire out-of-pocket cost for every Class Member.").

Nevertheless, here, the relief provided by the Settlement is sufficient to cover what Plaintiffs' expert estimated was the average repair cost related to Frost Clog Issues. *See* ECF Nos. 71, 71-1 (explaining how an average repair cost of $272.78 was determined). Moreover, under the Settlement, Settlement Class Members who have experienced multiple Frost Clog Issues can obtain much more than $300 in reimbursement for out-of-pocket costs. Specifically, Settlement Class Members can seek reimbursement for up to $300 for *each* Frost Clog Issue they have experienced, depending on when they experienced it. *See* SA (ECF No. 74-2) § IV.A.3.a. Further, Settlement Class Members who replaced their refrigerator after paying out-of-pocket expenses to address two or more Frost Clog Issues can receive reimbursement of up to 75% of their Class Refrigerator's original purchase price. *Id.* § IV.A.3.b.

Considering the substantial litigation risks Plaintiffs would have faced if this case had continued, in Class Counsel's view, the Settlement provides immediate and significant monetary relief that adequately compensates Class Members who have experienced Frost Clog Issues. Finally, unsatisfied Class Members have been given the opportunity to opt out of the Settlement. *See Corzine*, 2019 WL 7372275, at \*7 ("Federal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms." (quoting *Eisen v. Porsche Cars N. Am., Inc.*, No. 11-09405, 2014 WL 439006, at \*7 (C.D. Cal. Jan. 30, 2014)). Indeed, 26 Settlement Class Members have opted out of the Settlement as of the date of this filing.

Because only two out of approximately 354,000 Settlement Class Members—or 0.0005%—objected to the settlement, this factor also weighs in favor of approval. *See, e.g., Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement where 45 of 90,000 class members—or 0.05%—objected to the settlement and 500 class members—or 0.56%—opted out); *Larsen v. Trader Joe's Company*, No. 11-05188-WHO, 2014 WL 3404531, \*5 (N.D. Cal. Jul. 11, 2014)

(concluding that class member participation rate and positive response supported finding settlement was fair where "a total of a total of 59,830 class members have submitted claim forms, twenty-three have opted out, and sixteen have objected"); *Sugarman v. Ducati N. Am., Inc.*, No. 10-05246, 2012 WL 113361, at *3 (N.D. Cal. Jan. 12, 2012) (noting objections from 42 of 38,774 class members—0.1%— is a "positive response").

### c. Class Counsel approves the Settlement.

In deciding whether to grant final approval, courts afford significant weight to the opinions of experienced class counsel who are familiar with the litigation. *See In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*, No. 2672, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("Courts afford 'great weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528). This deference is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel is experienced in complex class action litigation and settlement, including in consumer protections cases like this one. Based on this experience, Class Counsel believe the Settlement is an excellent result for Settlement Class Members and, in light of the risks inherent in continued litigation, strongly endorse the Settlement. ECF No. 85 at 9; *see* ECF No. 85-1 ¶¶ 43–46.

### d. Presence of a governmental participant.

No governmental agency is involved in this case. Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, the Attorney General of the United States and Attorneys General of each State were notified of the proposed Settlement. ECF No. 86 ¶ 5; Angeion Supp. Decl. ¶ 4. They have neither raised objections to the Settlement nor sought to intervene in this litigation.

## B. The Notice Plan Satisfied Due Process and Adequately Provided Notice to Class Members.

Federal Rule of Civil Procedure 23(c)(2)(B) and procedural due process require "the best notice that is practicable under the circumstances" that is reasonably calculated to inform interested parties of the action and give them an opportunity to object. *See Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035,

1    1045 (9th Cir. 2019). However, "neither due process nor Rule 23 require that each individual class

2    member receive actual notice." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,*

3    *& Prods. Liab. Litig.*, 736 F. App'x 639, 640 (9th Cir. 2018).

4    **1.    The Dissemination of Notice was Proper.**

5    Here, in granting preliminary approval, the Court found the parties' proposed notice plan

6    provided the best notice practicable under the circumstances. *See* ECF No. 78 ¶ 7. The parties fully

7    implemented that notice plan in accordance with the Court's order. *See* Joint Decl. ¶¶ 10–13; Angeion

8    Supp. Decl. ¶¶ 6–25. As implemented, the notice plan—which included sending notice by mail and

9    email, advertising notice on the internet and social media platforms, and establishing a dedicated

10   Settlement Website and telephone hotline—satisfied due process and Federal Rule of Civil Procedure

11   23. The implemented notice plan also resembles other notice plans that have been approved in this

12   district as reasonably designed to inform absent class members of the action and their rights. *See, e.g.,*

13   *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 328–29 (N.D. Cal. 2018) (finding notice plan

14   that included mail, email, and a media campaign was adequate); *Corzine*, 2019 WL 7372275, at *4–5

15   (finding similar notice program adequate); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769,

16   779 (9th Cir. 2022) (finding notice was sufficient where administrator mailed and emailed notice to

17   addresses in the defendant's records and provided notice through social media). Accordingly, the Court

18   should find notice was adequate.

19   **2.    Notice Was Properly Given Under the Class Action Fairness Act.**

20   The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, requires each defendant

21   participating in a proposed settlement of a class action to give notice, in the form specified in CAFA,

22   to the U.S. Attorney and the "appropriate state official" as defined by CAFA, within ten (10) days after

23   the proposed settlement is filed in court. 28 U.S.C. §1715(b). The Settlement Agreement was filed with

24   the Court on October 31, 2024, and proper CAFA notice was given by Defendant Whirlpool on

25   November 8, 2024. ECF No. 86, ¶ 5; *id.* ¶¶ 6–8 (CAFA notice). *See also* Angeion Supp. Decl. ¶ 4.

26   CAFA has also been satisfied.

27

28

1    **C.    The Court Should Certify the Settlement Class.**

2        To certify a class, a plaintiff must show that the putative class meets Fed. R. Civ. P. 23(a)'s

3    four threshold requirements:

4            (1) the class is so numerous that joinder of all members is impracticable;
         (2) there are questions of law or fact common to the class; (3) the claims
5        or defenses of the representative parties are typical of the claims or
         defenses of the class; and (4) the representative parties will fairly and
6        adequately protect the interests of the class.

7    Fed. R. Civ. P. 23(a). A plaintiff must also demonstrate the proposed class satisfies "at least one of the

8    three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

9        **1.    Rule 23(a)(1): Numerosity**

10        Numerosity requires the proposed class to be so numerous that joinder is impracticable. Fed. R.

11    Civ. P. 23(a). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g., Slaven*

12    *v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000); *Lagunas v. Young Adult Inst., Inc.*, No. 23-654-

13    RS, 2024 WL 1025121, at *3 (N.D. Cal. Mar. 8, 2024) (class of 299 employees sufficiently numerous).

14    The Settlement Class consists of over 350,000 class members. ECF No. 64-1, ¶ 18. Numerosity is met.

15        **2.    Rule 23(a)(2): Commonality**

16        Commonality requires that there be "questions of law or fact common to the class." Fed. R.

17    Civ. P. 23(a)(2). "The Ninth Circuit has construed Rule 23(a)'s commonality factor permissively."

18    *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC,* 713 F. Supp. 3d 660, 671 (N.D.

19    Cal. 2024). *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (characterizing

20    commonality as a "limited burden" which "only requires a single significant question of law or fact").

21    Where claims "derive from a common core of salient facts, and share many common legal issues,"

22    commonality is met. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006).

23    "So long as there is 'even a single common question,' a would-be class can satisfy the commonality

24    requirement." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Wal-Mart*,

25    564 U.S. at 359).

26        Common questions exist as to the claims of the Settlement Class. Common legal questions

27    include, *inter alia*, whether: (1) Whirlpool breached the implied warranty of merchantability; (2) the

28    Frost Clog Issue rendered the Class Refrigerators unmerchantable; (3) Whirlpool had a duty to disclose

the Frost Clog Issue; (4) Whirlpool engaged in unfair, unlawful, or fraudulent acts; and (5) whether the Frost Clog Issue was material. Am. Compl., ECF No. 65-2 ¶ 90. Determining the "truth or falsity" of any of these questions will "resolve an issue that is central to the validity" of each claim. *Wal-Mart*, 564 U.S. at 350. As to common questions of fact, all Settlement Class Members derive their claims from the same set of circumstances. Each purchased a Class Refrigerator containing the same flawed design. Whirlpool's conduct—manufacturing these refrigerators and continuing to market and sell them, despite knowing that frost or ice routinely forms on the refrigeration compartment evaporator for these models—is identical for and forms the basis of each Settlement Class Member's claim. This uniform conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *Wal-Mart*, 564 U.S. at 350.

### 3.    Rule 23(a)(3): Typicality

Under typicality, this Court must determine whether the claims of the representative parties are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Settlement Class Representatives' claims and those of absent Settlement Class Members arise from the same practice or course of conduct, and they "seek to recover pursuant to the same legal theories." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). *See Just Film v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (class representative's "claim is typical of the class because it shares some common question of law and fact with class members' claims") (internal quotation omitted). Settlement Class Representatives purchased a Class Refrigerator plagued by the same issues as the other Class Refrigerators, and they suffered the same injuries as other Settlement Class Members. The typicality requirement is satisfied. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." (internal quotation marks and citation omitted)).

### 4.    Rule 23(a)(4): Adequacy of Representation

Representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this standard, courts ask two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative

plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Neither Settlement Class Representatives nor Class Counsel have any conflicts of interest with the Settlement Class. The record contains no suggestion of any conflict of interest whatsoever. *See Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (stating that "[a]dequate representation is usually presumed in the absence of contrary evidence"). That Settlement Class Representatives share the same legal claims and same injuries as Settlement Class Members further supports their adequacy under Rule 23(a)(4). *See Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1185 (N.D. Cal. 2023) (adequacy shown because "Named Plaintiffs' claims are co-extensive with those of the putative class members"). And Settlement Class Representatives and their counsel have worked vigorously to prosecute this case and achieve a favorable Settlement for Settlement Class Members. *See* ECF Nos. 64-2, 64-3 (Settlement Class Representative declarations describing their active participation in this case); ECF No. 85-1 at 13 (Class Counsel declaration attesting to their experience with consumer protection class action litigation); ECF No. 64-1 at 108–84 (Class Counsel résumés).

### 5.    Rule 23(b)(3): Predominance

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "To determine whether a class satisfies the requirement, a court pragmatically compares the quality and import of common questions to that of individual questions." *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020). *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (describing predominance as an assessment of "whether proposed classes are sufficiently cohesive to warrant adjudication by representation") (quotations omitted). "An individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting, Newberg on Class Actions by W. Rubenstein § 4:50, 196–97 (5th ed. 2012)).

Questions common to Settlement Class Members predominate over any individual questions. Whirlpool's same conduct forms the basis for all four causes of action. Plaintiffs allege Whirlpool fraudulently concealed the Frost Clog Issue in the Class Refrigerators. Because the Class Refrigerators were manufactured and sold with this defect, Whirlpool breached its implied warranties arising under California's Song-Beverly Consumer Warranty Act, the California Commercial Code, and California common law. *See* Am. Compl., ECF No. 65-2, ¶¶ 96–127 (Counts I & II). Whirlpool's same fraudulent conduct forms the basis for the California consumer protection law claims. *See id.* ¶¶ 128–70 (Counts III & IV). The Settlement Class satisfies the predominance requirement through common, generalized proof for all four causes of action. Should Plaintiffs try this case before a jury, Plaintiffs would prove, among other things, that: (1) the Class Refrigerators all lack a defrost heater accompanying the refrigeration compartment's evaporator; (2) this design causes the Class Refrigerators to periodically fail; and (3) Whirlpool knew the Class Refrigerators were susceptible to periodic cooling failures and continued to manufacture, market, and sell the Class Refrigerators to unwitting consumers. Each Settlement Class Member suffered the same conduct—being sold a defective Whirlpool-manufactured refrigerator. The facts supporting each Settlement Class Member's claims will be uniform as Whirlpool's conduct was consistent for the entire Settlement Class.

California federal courts commonly certify these claims when presented with analogous factual scenarios. *See, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 529–34, 537 (C.D. Cal. 2012) (certifying California UCL, CLRA, and implied warranty claims in products liability action against automobile manufacturer for defective vehicle suspension and holding that predominance requirement was met because the claims of all class members involved the same alleged defect, and each claim was susceptible to common proof); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012) (finding that "common questions predominate" for Song-Beverly Warranty Act claim because "an implied warranty claim requires an objective standard" and "because Plaintiffs' theory here is grounded in a defective design common to all Washers"); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596 (C.D. Cal. 2008) (predominance established where "the common questions for determining whether class members may recover under the CLRA include: (1) whether defendant was aware of the alleged defect; (2) whether defendant had a duty to disclose its knowledge; (3) whether defendant failed

to do so; (4) whether the alleged failure to disclose would be material to a reasonable consumer; and (5) whether defendant's actions violated the CLRA").

### 6.    Rule 23(b)(3): Superiority

Rule 23(b)(3) also requires courts to determine whether class treatment is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In this case, a class action is the only reasonable method to efficiently and fairly adjudicate Settlement Class Members' claims against Whirlpool. Absent the class action device, Settlement Class Members would need to individually prosecute their own separate actions, which would burden courts, require the repeated adjudications of the same legal issues, thereby creating a potential for inconsistent or contradictory judgments, and would be prohibitively costly for individual litigants. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually"); *In re Hulu Priv. Litig.*, No. 11-03764, 2014 WL 2758598, at *22 (N.D. Cal. June 17, 2014) ("Aggregation in a class action can be efficient when many individuals have small damages because absent a class suit, it is unlikely that any of the claimants will be accorded relief."). By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 466 n.12 (1975) (acknowledging "the purposes of litigatory efficiency served by class actions"). Class treatment is superior here.

### IV.    CONCLUSION

For the above reasons, Plaintiffs respectfully submit that the Settlement Class meets all the requirements of Rule 23 and should be finally certified, and that the Settlement should be granted final approval because it is a fair and reasonable result. Attached hereto are a [Proposed] Order Granting Final Approval and a [Proposed] Final Judgment.


//

//

1

Dated:  April 4, 2025.                    Respectfully submitted,

2

By: *s/ Laura R. Gerber*

3
Laura R. Gerber (*Pro Hac Vice*)
Michael Woerner (*Pro Hac Vice*)

4
Andrew N. Lindsay (*Pro Hac Vice*)
KELLER ROHRBACK L.L.P.

5
1201 Third Avenue, Suite 3400
Seattle, Washington 98101

6
(206) 623-1900

7
lgerber@kellerrohrback.com
mwoerner@kellerrohrback.com

8
alindsay@kellerrohrback.com

9
Alison E. Chase (SBN 226976)

10
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301

11
Santa Barbara, California 93101
(805) 456-1496

12
achase@kellerrohrback.com

13
Michael J. Brickman (*Pro Hac Vice*)

14
James C. Bradley (*Pro Hac Vice*)
Nina Fields Britt (*Pro Hac Vice*)

15
Caleb M. Hodge (*Pro Hac Vice*)
ROGERS, PATRICK, WESTBROOK &

16
BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A

17
Post Office Box 1007
Mount Pleasant, South Carolina 29465

18
(843) 727-6500

19
mbrickman@rpwb.com
jbradley@rpwb.com

20
nfields@rpwb.com
chodge@rpwb.com

21

22
Kenneth Behrman (*Pro Hac Vice*)
ATTORNEY AT LAW

23
5855 Sandy Springs Circle, Suite 300
Atlanta, Georgia 30328

24
(770) 952-7770

25
ken.behrman@behrmanlaw.com

26
***Attorneys for Settlement Class Representatives and***
***the Settlement Class***

27

28